Antoinette **LOLLIS**, on her own behalf and on behalf of all others similarly situated, namely those children confined to Training Schools in the State of New York, Plaintiffs,

v.

**NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES**, George K. Wyman, Commissioner, State Department of Social Services, et al., Defendants.

Joe **PENA**, on his own behalf and on behalf of all others similarly situated, namely those children confined to and paroled from Training Schools in the State of New York, Plaintiffs,

v.

**NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES**, George K. Wyman, Commissioner, State Department of Social Services, et al., Defendants.

Nos. 70 Civ. 4750, 70 Civ. 4868.

United States District Court.
S. D. New York.

April 30, 1971.

See also, D.C., 322 F.Supp. 473.

———◆———

Burt Neuborne, New York Civil Liberties Union, New York City, for plaintiff Lollis.

The Legal Aid Society, Brooklyn, N. Y., for plaintiff Pena; James D. Silbert, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of State of N. Y., New York City, for defendants; Hillel Hoffman, New York City, of counsel.

LASKER, District Judge.

On January 19, 1971, we issued a preliminary injunction enjoining the defendants in the first above captioned case from placing plaintiffs and members of their class in isolation for an extended period except in accordance with proposed regulations of the New York State Department of Social Services to be approved by the court and to include provisions governing such matters as the maximum period of confinement, place of confinement, conditions of confinement, and reports as to confinement. On January 15, 1971, perhaps in reaction to this litigation, the State Department of Social Services had issued regulations dealing in particular with the subject matter described above. Defendants contended that the court should approve the January 15th regulations. Plaintiffs argued that the proposed regulations were inadequate and should not be approved.

For the purpose of permitting the court to determine the propriety of the regulations, an evidentiary hearing was held on February 1, 1971, at which expert witnesses testified for each of the parties.[1]

1. *Witnesses for Plaintiffs*

Dr. James L. Curtis—Associate Professor of Psychiatry and Associate Dean of Cornel Medical College. Previously chief psychiatrist for New York City Department of Welfare and director of psychiatry for New York City Community Mental Health Board. Certified as specialist in psychiatry by American Board of Psychiatry and Neurology; member of American Psychoanalysis Association and Fellow of American Psychiatric and Orthopsychiatric Association. Trained in child psychiatry at Northside Center for Child Development in Harlem. A member for the past two years of the Task Force of the Citizens Committee for Children.

Dr. Benjamin Spock—Renowned pediatrician and writer on pediatrics. Member of staffs of Cornell Medical College and New York Hospital in pediatrics and psychiatry. Served as Ward medical officer in psychopathic ward in Navy in World War II. Member of staff of Mayo Clinic as psychiatrist and child psychiatrist. Four years at Western Psychiatric Institute and Professor of Child Development at University of Pittsburgh. Twelve years on staff of University of Western Reserve University Medical School, Cleveland, as Professor of Child Development.

Dr. Esther Rothman—Principal of Livingston School for Girls, a school for very aggressive girls suspended from regular school system. Master's degree in education of exceptional children and doctorate in clinical psychology. Taught at Bellevue Psychiatric Hospital. Interned at University Hospital in psychology. Research supervisor to Shield of David Institute for Retarded Children; staff psychologist for Boys and Girls Service League; consultant to Center of Urban Education; consultant to federal government on the Job Corps.

Dr. E. Richard Feinberg—Director of Bronx Children's Psychiatric Hospital. Interned in pediatrics at Albert Einstein College of Medicine, resident in psychiatry two years there; Fellow of child psychiatry for two years at Albert Einstein College. Chief of in-patient psychiatric

In the light of the disposition of the pending matter, it is unnecessary to marshall the evidence in detail. It is sufficient to say that the clearly expert witnesses for the plaintiffs unanimously testified, in particular, that the maximum period of confinement permitted by the regulations (seven consecutive days at the Annex of the Boys Training School at Goshen and the Brookwood Annex for Girls at Claverack, and four consecutive days elsewhere) was in their opinion psychologically destructive, cruel and counter-productive as an educational or therapeutic method. Not surprisingly, plaintiffs' witnesses all testified that the conditions of isolation imposed on the plaintiffs here, that is, isolation without any furniture, reading matter, recreational facilities or ordinary clothing, aggravated the destructiveness of the isolation itself. Witnesses for the defendants were equally unified in their view that the possibility of seven days confinement under the conditions described was not inhuman or cruel, that such confinement was necessary on occasion for the protection of those to whom it was administered as well as others, and that the necessities of administering the institutions required that officials in charge be granted authority to impose confinement for such periods and under such conditions in proper circumstances.

### The Sostre Decision

On February 24, 1971, the Circuit Court of this Circuit decided Sostre v. McGinnis, 442 F.2d 178. The District Court had found that holding Sostre in extended solitary confinement constituted cruel and unusual punishment, and enjoined state officials from imposing such confinement except in accordance with regulations to be approved by the court.[2]

In a wide ranging analysis of the concept of cruel and unusual punishment, the Court of Appeals observed:

"For a federal court * * *, to place a punishment beyond the power of a state to impose on an inmate is a drastic interference with the state's free political and administrative proc-

service for children at Columbia Hospital, then director of the school (an institution for mentally retarded children). Presently faculty member at Albert Einstein College of Medicine. Certified as specialist in psychiatry and child psychiatry by American Board of Psychiatry and Neurology.

Dr. Ernst Papanek—Director for nine years of Wiltwyck School for Boys. Previously worked with children from concentration camps in Germany and France, children's aid societies, building institutions in Europe, and from Europe to Egypt, for refugee children.

*Witnesses for Defendants*

Dr. Herbert Holzer—Trained in psychiatry at Rockland State Hospital in conjunction with New York Psychiatric Institute. Intership at Harlem Hospital, supervisor at Vanderbilt Clinic. Diplomate of American Board of Psychiatry, certified in psychiatry. Presently consulting psychologist at West Haverstaw, Assistant under the Chief at Rockland State, and consultant to Boys Training School at Goshen.

Frank Shaughnessy—Member of Academy of Certified Social Workers and Certified Social Workers of State of New York, and member of National Association of Social Workers. Experience in child welfare in Monroe County, Rochester. Director of rehabilitation center and for 12 years at State Training Schools. Previously Director of Clinical Services at Goshen Annex for Boys and New Hampton School for Boys. Presently Director of Brookwood Center for Girls (Brookwood Annex).

Lawrence Wolfson—Graduate of City University of New York, Master's from Columbia. Attended Adelphi School of Social Work. Extended practice of treating institutionalized children and consulting with their families. Presently Director of Bureau of Children's Institutional Services of the Department of Social Services of New York.

2. Because of the apparent impact of *Sostre* on the instant case, the court requested the parties to submit their views as to the effect of the Court of Appeals decision on the issue here. Their written observations have been received and considered in detail.

esses. It is not only that we, trained as judges, lack expertise in prison administration. Even a lifetime of study in prison administration and several advanced degrees in the field would not qualify us *as a federal court* to command state officials to shun a policy that they have decided is suitable because to us the choice may seem unsound or *personally* repugnant. \* \*

"Accordingly, we have in the past declined to find an Eighth Amendment violation unless the punishment can properly be termed 'barbarous' or 'shocking to the conscience.' See Church v. Hegstrom, 416 F.2d 449, 451 (2d Cir. 1969). Although the conditions Sostre endured were severe, we cannot agree with the district court that they were 'so foul, so inhuman, and so violative of basic concepts of decency,' Wright v. McMann, 387 F.2d 519 (2d Cir. 1967), as to require that similar punishments be limited in the future to any particular length of time. Nor can we agree that Sostre's own long confinement—however contrary such prolonged segregation may be to the views of some experts— would have been 'cruel and unusual' had Sostre in fact been confined for the reasons asserted by Warden Follette, rather than on account of his beliefs and litigiousness." (442 F.2d 191–192).

### The Effect of *Sostre* as to the Finding of Cruel and Unusual Punishment in this Case

The defendants contend that, in the light of the quotation above, the judgment of state administrative officials is not to be judicially regulated unless administrative acts result in conditions that are barbarous or shocking to the conscience of the court. They argue that the conditions in the cases at bar are not such "as to require the Court to hold that isolation in itself is violation of

the Eighth Amendment." Thus stated, no issue can be taken with defendants' position. Indeed, in the principal opinion in this case it was made clear that isolation was not considered cruel and unusual punishment per se, but that the extended nature of the isolation and the conditions under which isolation was imposed on the plaintiffs here was such as to shock the conscience, and specifically did shock the conscience of Family Court Judge Burstein, who witnessed them in person as to plaintiff Lollis. *Sostre* does not, in my opinion, require any alteration of the view that Lollis' isolation constituted cruel and unusual punishment. This view is reinforced by the fact that an important predicate of the *Sostre* decision was that Sostre was a convicted felon (rather than, as in the case of Lollis, a fourteen-year old, unconvicted and unaccused "person in need of supervision"). The *Sostre* decision is replete with indications that treatment not approvable in other circumstances is permissible in penal institutions. Although of marginal importance, it may be added that (putting aside the length of Sostre's confinement) the conditions of his segregation appear in many ways to have been preferable to those imposed on Lollis. For example, *Sostre* had substantial human contact and the opportunity, though rejected, to participate in group therapy. He was entitled to an hour of exercise daily, and had some access to the prison library.

Furthermore, it is worth noting that the Court of Appeals stated in *Sostre*:

"In some instances, depending upon the conditions of the segregation, and the mental and physical health of the inmate, five days or even one day might prove to be constitutionally intolerable." (442 F.2d 193, fn. 23).

For these reasons I decline to adopt the view that under the *Sostre* rationale no violation of the Eighth Amendment has occurred in the instant case.[3]

---

3. In view of my holding that *Sostre* does not compel a modification of the finding that violations of the Eighth Amendment occurred in the instant cases, it is un-

necessary to act on plaintiffs' additional argument that *Sostre* in any event does not dilute the rationale of Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417,

### The Effect of *Sostre* as to Judicial Approval of Administrative Regulations

Numerous passages in the *Sostre* decision instruct us that, except in most extraordinary circumstances, it is not a proper function of a federal court to impose regulations for the administration of custodial institutions. While the discussion in *Sostre* relating to judicial approval of administrative regulations dealt with Fifth Amendment rights of due process, since the *Sostre* case was permeated by the question of cruel and unusual punishment it is reasonable to construe that decision as applying not only to Fifth Amendment rights, but with equal force to those arising under the Eighth Amendment. Accordingly, the injunction of January 19, 1971 must be modified to eliminate the requirement that regulations be submitted to and approved by this court. However, if a finding were to be made as to the maximum period of isolation permitted under the Eighth Amendment in the case of adolescent persons in need of supervision, that period might well be limited, on the basis of the evidence presented, to 24 hours, and under conditions including reasonable facilities and furnishings in the place of isolation. This observation does not cast doubt on the obvious sincerity and good faith of the state officials in believing that their view is sound and in the best interests of their wards, but would rest on the very great weight of evidence to the contrary.

Since under *Sostre* it is not the function of this court to sanction administrative regulations, the plaintiffs' remedy now lies with the Legislature, which last year demonstrated its strong feelings on the subject by its passage of Assembly Bill No. 4658 generally limiting isolation of persons in state training schools to a maximum of 24 hours. While the Governor vetoed the 1970 bill, he did so on the recommendation of the Community Services Society, that a maximum period of isolation be determined by administrative regulation rather than legislation. The Society, as indicated by a detailed letter submitted to the Commissioner (a copy of which was furnished to the court) has severely criticised the regulations issued by the Commissioner, and now recommends that "the maximum time that a child may be kept in confinement as a security measure [be limited] to no more than a 24-hour period at any one time," and that the regulations should provide that "children who are isolated should be placed in their own rooms, or rooms * * * that are suitable for the confinement of children" with proper recreation and reading material.

In determining to modify the present injunction, the court bears in mind the indication by defendants (Defendants' Original Memorandum in *Pena* case, p. 12) that an injunction relating to one plaintiff would be "respected by the State of New York to the same degree as an injunction on behalf of unknown and unspecified plaintiffs." The present injunction will be modified to provide that Superintendents Shaughnessy and Catlett shall be enjoined, pending trial, from placing plaintiffs Lollis and Pena, respectively, in isolation under the conditions in which they were isolated as set forth in the respective complaints.

Submit order on notice.

---

8 L.Ed.2d 758 (1962), and its progeny condemning as cruel and unusual punishment the imposition of penal sanctions upon those to whom the state owes treatment."