**Arnold HAMILTON, Plaintiff,**

v.

**Hon. D. Donald JAMIESON, President Judge, Common Pleas Court, et al., Defendants.**

**Civ. A. No. 72–1552.**

United States District Court,
E. D. Pennsylvania.

Jan. 26, 1973.

As Amended March 16, 1973.

Arnold Hamilton, pro se.

David Richman, Gustine J. Pelagatti, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

HUYETT, District Judge.

Plaintiff, Arnold Hamilton, seeks damages in this civil rights action under 42 U.S.C. §§ 1983–85 (1970). The pro se complaint consists of a document entitled "Complaint: Violation of Civil Rights" and an accompanying affidavit. The complaint, by itself, is too vague and conclusory to survive a motion to dismiss, but the accompanying affidavit will be construed as a part of the complaint. The two documents taken together apparently inform the defendants of the alleged facts and events giving rise to plaintiff's alleged cause of action.

Arnold Hamilton originally sought $100,000 damages, a copy of a ballistics report, and certain ballistics information. He has submitted an unopposed motion for leave to amend his complaint to delete the demand for the ballistics report and other information. Consequently, the only relief sought by plaintiff is $100,000 of damages.

The plaintiff alleges that the defendants by their conduct denied him his civil rights at a criminal trial prosecuted by the Commonwealth of Pennsylvania in Philadelphia. At the trial, plaintiff Arnold Hamilton was convicted of murder. The evidence indicated that on December 29, 1967 he entered the maternity ward of the Hospital of the Women's Medical College, where his wife had just given birth and that there he shot and killed his wife. That conviction is currently on appeal to the Pennsylvania Supreme Court. The plaintiff has previously attacked his conviction in a habeas corpus action entitled United States ex rel. Arnold Hamilton v. Edward J. Hendrick, Superintendent Philadelphia County Prisons, Civil Action No. 71–434 (E.D.Pa. July 26, 1971) which was dismissed for failure to exhaust state remedies as required by 28 U.S.C. § 2254(b) (1970).

The defendants have moved for a dismissal pursuant to Fed.R.Civ.P. 12(b) for failure to state a cause of action upon which relief can be granted. The motion of each defendant or group of defendants will be considered separately because different facts are alleged against each defendant. All the defendants who were employed by the Commonwealth of Pennsylvania argue among other things, that they are protected by the doctrine of immunity. This argument will also be dealt with individually for each defendant because the application of the doctrine varies depending on the position held by each defendant and the facts alleged against each defendant.

Plaintiff, to oppose defendants' motions, has filed a document entitled "Arnold Hamilton's Statement of Facts Showing Genuine Issue for Trial under Rule 56(e)." This document describes more fully and precisely some of the events alleged in his complaint, but is completely nonresponsive to the motions to dismiss.

## DR. M. E. ARONSON—MEDICAL EXAMINER OF THE CITY OF PHILADELPHIA

The Complaint alleges that the plaintiff was told in correspondence with Dr. Aronson that Dr. Aronson was

unqualified to give any opinions concerning the caliber of the bullets removed from the deceased. Plaintiff does not allege that this statement was made in bad faith or that Dr. Aronson participated in any conspiracy or wrongful conduct, or even that the statement is erroneous. Clearly, the complaint and accompanying affidavit fail to state a cause of action against defendant Dr. M. E. Aronson, and the complaint must be dismissed as to him.

## THE DISTRICT ATTORNEYS—ARLEN SPECTOR, WILLIAM J. STEVENS AND ANTHONY BATEMAN

■■ Arlen Spector is named a defendant in the caption of this action, but his name appears nowhere in the text of the complaint or the accompanying affidavit. This fact alone is sufficient for a dismissal. United States ex rel. Tyrrell v. Speaker, 471 F.2d 1197, at 1204 (3d Cir. 1973). Perhaps the plaintiff intended to allege facts supporting a *respondeat superior* rationale for holding Arlen Spector liable, or perhaps he intended to support a theory that the District Attorney was negligent in supervising the work of his assistants. These possibilities, however, are pure speculations. We cannot hold Arlen Spector liable on a theory of *respondeat superior* absent allegations of participation in the misconduct, knowledge of the misconduct, or even ordinary negligence. Mills v. Larson, 56 F.R.D. 63 at 66, 67 (W.D.Pa. 1972). Federal immunity [1] protects Arlen Spector from any theory of recovery based on ordinary negligence absent an allegation of bad faith or actions outside the scope of his jurisdiction.[2]

■■ The two Assistant District Attorneys who prosecuted the plaintiff are specifically accused of several allegedly wrongful acts. First, they allegedly withheld from evidence and from Arnold Hamilton a cartridge and a bullet found in the body of the deceased. It is a denial of due process for prosecutors to withhold from the defense any evidence possibly favorable to the accused. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The failure to turn over the bullet might give rise to a civil rights cause of action if the plaintiff alleged the fact that the prosecutors acted in bad faith or alleged facts and circumstances from which bad faith might be inferred. Not only did the plaintiff here fail to allege any such circumstances, but also according to the testimony of Arnold Hamilton in the criminal proceeding, the bullet and cartridge could not possibly be exculpatory. Moreover, Arnold Hamilton wanted the items to support a theory that someone else fired the first shot. This theory was not proposed until after the trial was concluded and Arnold Hamilton had been convicted.[3] The principles in *Brady* do not apply because the evidence was not reasonably exculpatory and was not asked for during or before the trial.

■■ Next Arnold Hamilton alleges that the prosecutors, the trial judge, and the court-appointed defense attorneys held secret, unrecorded conferences during the trial. Twenty such conferences occurred during the trial according to an affidavit filed by Arnold Hamilton.[4] It

---

1. It should be noted for the purposes of this discussion of immunity and the subsequent discussions of immunity in this opinion that the sole remedy sought by Arnold Hamilton is money damages. The standards for immunity from injunctive relief are different. Littleton v. Berbling, 468 F.2d 389 (7th Cir. 1972).

2. Prosecutors, state and city attorneys are generally immune under the Civil Rights Acts, unless their acts are clearly outside their jurisdiction. See C. Antieau, Federal Civil Rights Acts § 40, at 72 (1971) and the cases cited in footnote 31 on the same page.

3. The requests for the reports were first made on September 2, 1971, the date of sentencing. This date is over two years after the conclusion of the trial. *See* "Arnold Hamilton's Statement of Facts Showing Genuine Issue for Trial" at ¶ 1 (a), filed September 19, 1972.

4. *Id.* at ¶ 1(d).

is true that these conferences were unrecorded. Better practice is for them to be recorded. The record, however, clearly indicates that these were standard side-bar conferences. The trial lasted twelve days, so there was an average of less than two conferences per day. That number is hardly excessive. Holding side-bar conferences is a proper courtroom procedure. Consequently, such conferences were either perfectly proper or at least within the scope of immunity given prosecuting attorneys.

The plaintiff also accuses the Assistant District Attorneys of acting in concert with defense attorneys to drug him so he would testify about "distasteful" matters.[5] This accusation is beyond the scope of prosecutor's immunity because the drugging would have to be done with intent to deny a fair trial by depriving Arnold Hamilton of his Fifth Amendment right to remain silent. In addition, if his own counsel were allegedly involved, he would be denied the right to effective assistance of counsel. The statute of limitations governing the allegation, however, has run as discussed below.

The motion of Arlen M. Spector, William J. Stevens and Anthony G. Bateman, District Attorneys for the County of Philadelphia, to dismiss the complaint of Arnold Hamilton will be granted.

## THE JUDGES—THE HONORABLE D. DONALD JAMIESON AND THE HONORABLE KENDALL H. SHOYER

█ The plaintiff alleges that Judge Jamieson, President Judge of the Philadelphia Court of Common Pleas, is responsible for the actions of Judge Shoy-

er, the trial judge, in conducting the criminal case. The complaint is completely conclusory on this point. There is no legal duty for Judge Jamieson to oversee the conduct of his colleagues in conducting trials nor is there any means by which Judge Jamieson could control the conduct of Judge Shoyer or any other judge. Consequently, the complaint fails to state a cause of action against Judge D. Donald Jamieson.

█ The allegations against Judge Shoyer are several: he generally displayed ignorance of criminal due process; he acknowledged that no one knew who fired the first shot; he did not present this unresolved issue to the jury; he did not question the defense attorneys concerning their reasons for not including these matters in post-trial motions; continued with trial despite knowledge that Mr. Hamilton was mentally ill; he denied plaintiff the hearing of eyewitness prosecution testimony in that no amplifying system was used; and he did not grant a full evidentiary hearing on the many petitions submitted by plaintiff.

These allegations are at worst errors of law in conducting the trial. It is to protect judges from exactly this type of allegation that the doctrine of federal judicial immunity was developed. Judges should be free to resolve issues of law and fact in the best interests of all parties and society generally without fear of law suits against him should he err. Pierson v. Ray, 396 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

Because Judge Kendall H. Shoyer is protected by the doctrine of legal immunity, his motion to dismiss will be granted.

---

5. Some of the matters about which Arnold Hamilton testified which might be termed distasteful were the sexual activities of his mother, his early childhood experiences, his relations with women, questions of possible homosexuality, an incident when he struck his wife, his accusations that his wife was committing incest, his shooting of his wife, his attempted suicide, and the possibility that he was insane. See the testimony of Arnold Hamilton in Commonwealth v. Hamilton, on March 21, 24, 25, 1968, at Record 724–1172 in the Court of Common Pleas, First Judicial District Trial Division, February Sessions, Nos. 1078, 1080, 1081.

## THE DEFENSE ATTORNEYS—GUSTINE J. PELAGATTI AND LARRICK B. STAPLETON

The plaintiff accuses his defense attorneys of several improper acts. They allegedly participated with the prosecution in secret, unrecorded conferences during the trial; denied plaintiff access to pertinent parts of the trial transcript; refused to support and advocate certain positions taken by plaintiff in the post-trial motions; and participated in the drugging of plaintiff.

As a matter of law, defense attorneys, even court-appointed ones, are private persons. Consequently, they do not act under color of law, so any actions which they undertake on their own are not within the scope of the Civil Rights Act of 1871. Reinke v. Richardson, 279 F.Supp. 155 (E.D.Wis.1968). If attorneys act in conspiracy with a state official to deprive a person of his constitutional rights, however, they may be deemed to be acting under color of law. Under these circumstances, they may be held liable under 42 U.S.C. § 1985 (1970). Here the alleged acts performed by the defense attorneys with the District Attorneys were the side-bar conferences and the drugging of the plaintiff. The side-bar conferences were perfectly proper conduct and are not actionable.

As for the drugging of plaintiff, Arnold Hamilton, the event may be actionable; but as discussed below the statute of limitations has run.

The complaint of Arnold Hamilton against Gustine J. Pellagatti, Esq., and Larrick B. Stapleton, Esq. will be dismissed.[6]

---

6. There is a procedural matter worthy of note. Neither of the two defense attorneys has made a motion to dismiss nor pleaded the statute of limitations as a defense. It is apparent, however, that for the purposes of the matters discussed in this opinion, the defense attorneys are in exactly the same position as the Assistant District Attorneys who did make, the proper motions and raise the statute of limitations argument. The defense attorneys obviously will not be prejudiced

## STATUTE OF LIMITATIONS

The defendants argue that the applicable statute of limitations has run. The dates which are significant to this argument are May 4, 1971, when post-trial motions were disposed of; September 2, 1971, when Judge Shoyer sentenced Arnold Hamilton; and August 7, 1972, when the plaintiff filed his complaint in this action.

There are two separate issues which must be resolved in the defendants' favor before the statute of limitations defense can prevail. First, it must be determined what statute of limitations applies to the facts alleged in the complaint. Second, it must be determined which dates are the key ones for the statute of limitations; that is, when did the statute begin to run.

The Congress when it enacted the Civil Rights Act did not provide for a national statute of limitations. Consequently, it is necessary to examine the various statutes of limitations in the appropriate state, in this instance Pennsylvania, and apply the statute which limits actions most similar to the one in the instant complaint. Swan v. Board of Higher Educ., 319 F.2d 56 (2d Cir. 1963); Conard v. Stitzel, 225 F.Supp. 244, 247 (E.D.Pa.1963).

An examination of the various Pennsylvania statutes of limitations quickly narrows the possible statutes to two: the statute for false imprisonment (two years, Pa.Stat.Ann., tit. 12, § 31 (1953) and the statute for malicious prosecution (one year, Pa.Stat.Ann. tit. 12, § 51 (1953). We conclude that the one-year statute of limitations applies in this case. Admittedly, facts alleged by

by their dismissal because they will no longer be exposed to liability in this suit. Mr. Hamilton will not be prejudiced because he has known of the argument by the District Attorneys and has failed to raise any counter argument. The argument applies equally well to both groups of defendants, and it would not serve any interest to prolong this suit further to await formal motions by the defense attorneys.

the plaintiff would not support a tort case for malicious prosecution. The necessary elements are not all present. For example, the criminal trial did not end in an acquittal, and plaintiff does not allege that the prosecutors lacked probable cause to believe that the plaintiff was guilty at the time of his arrest.[7] This tort deals with the taking of a person into custody or detaining an unreasonably long time before bail is set or a hearing is held.[8] It does not apply to occurrences at trial.

Thus, we reach the not very surprising conclusion that a Civil Rights complaint often would not be actionable as pleaded under state law. Because different elements must be pleaded and proved, the Civil Rights action will not fit neatly into a pigeonhole in a state's various statutes of limitations for different torts.

An examination of the elements may be helpful in some instances, but often it will be necessary to look more closely at the gravamen of the complaint and the basic nature of the torts in question.

In the instant case, Arnold Hamilton complains that the trial process was replete with legal errors and abused by persons who sought his conviction. False imprisonment basically applies to force used to confine a person illegally. Malicious prosecution, on the other hand, applies to a perversion of legal process by malicious or overzealous persons. Malicious prosecution is the tort more analogous to the acts alleged in the complaint in this case. Therefore, the one-year statute of limitations will be applied.

The second issue is whether the actionable events ceased on or before the end of the trial and post-verdict motions, May 4, 1971, or continued through the sentencing, September 2, 1971. If

the latter, the complaint was filed within one year of their occurrence. Hamilton does allege that certain events which took place at or about the time of sentencing are actionable. The only alleged event, however, that gives rise to a cause of action is the drugging of Arnold Hamilton before he testified. That event occurred long before sentencing, on March 21, 1969.

There is one more possible argument that the statute of limitations has not run. If the drugging alleged in the complaint is interpreted as an overt act in furtherance of a conspiracy to deny the plaintiff a fair trial, then the conspiracy may have lasted until such time that the statute of limitations did not expire. This interpretation assumes the conspiracy lasted until sentencing September 2, 1971. We conclude, however, that this possible interpretation conflicts with plaintiff's allegations. Arnold Hamilton does not allege a general conspiracy to deny him a fair trial. In the complaint proper, the plaintiff does state that defendants acted "single and or severally." In the accompanying affidavit, however, a series of events are alleged; some involved one defendant, and others involved several defendants. The conclusion we reach is that in the complaint, plaintiff made merely general reference to the events involving one or several defendants and did not allege a general conspiracy. Even if the bald assertion that the defendants acted "single and or severally" does suggest a conspiracy, that suggestion is weakened by the accompanying affidavit. The specific allegations in the affidavit describe separate, divisible actions, not a general conspiracy. A district court to deny a motion to dismiss need not give constructional preference to sweeping generalizations rather than specific allegations which preclude relief..

---

7. See generally 23 Pa.L.Encyc. Malicious Prosecution § 8 (1959).

8. See generally 16 Pa.L.Encyc. False Imprisonment § 1 (1959); Restatement (Second) of Torts § 35 (1965).

In further support of the conclusion that no general conspiracy was alleged, we note that nowhere in the complaint is the word "conspiracy" used. Had a lawyer drafted the complaint, this omission would be fatal; but under Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), it is merely persuasive. Even inferring from the complaint that there was a conspiracy among Judge Shoyer, the District Attorneys, and the defense counsel to drug the plaintiff, it does not follow that the conspiracy continued thereafter. The defense attorneys might well have wanted desperately for Arnold Hamilton to testify about "distasteful things" to support the defense of insanity. The defense attorneys' participation in any conspiracy could well have ceased then. Thus, the plaintiff has failed to allege a conspiracy to deny Arnold Hamilton a fair trial, and it is not reasonable to infer such a conspiracy from the specific facts alleged.

■■■ We note that under *Haines*, district courts may not dismiss *pro se* complaints unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'." *Id*. at 520–521, 92 S.Ct. at 596. We are not required, however, to stretch our imagination to manufacture allegations to supplement the complaint or to assume facts inconsistent with it after finding that the facts alleged preclude relief. In considering *pro se* complaints, we will not hold them to a high standard in pleading matters of law, and will liberally infer facts which *pro se* plaintiffs through lack of knowledge and experience might omit. We will not, however, infer facts as important, basic, and obvious as those necessary here to avoid the defense of the statute of limitations.

The complaint of Arnold Hamilton will be dismissed.