**James Robert COOK**

**v.**

**James D. COX, etc. et al.**

**Civ. A. No. 230–70–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

April 16, 1973.

Daniel A. Carrell, Richmond, Va., for plaintiff.

Vann H. Lefcoe, Asst. Atty. Gen., Commonwealth of Virginia, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

James Cook, a Virginia prisoner, seeks redress from the defendant prison officials for alleged constitutional deprivations suffered while he was incarcerated in the state penitentiary. Jurisdiction is attained by virtue of 28 U.S.C. § 1343, 42 U.S.C. § 1983. The parties are presently before the Court pursuant to plaintiff's motion for a hearing. Because of the peculiar history of this litigation, however, the Court finds this matter ripe for summary judgment. The issues appurtenant thereto have been fully briefed by counsel in memoranda before the Court. It is upon same, and the records before it, that the Court deems this matter ready for disposition.

Cook brought this action *pro se* against J. D. Cox, then Superintendent of the Virginia State Penitentiary, on April 21, 1970, alleging that he was unconstitutionally confined to isolation (solitary confinement) and padlock on several occasions and that he had been beaten by an unnamed prison guard without reason. Counsel was appointed for Cook on June 30, 1971, when it appeared that controverted issues of fact and law existed on the record before the Court. On September 22, 1971, plaintiff submitted his demand, by counsel, for jury trial of the factual issues raised. On March 21, 1972, the Court granted defendant Cox's motion of March 22, 1972, for a more definite statement of claims. On March 31, 1972, Cook, by counsel, filed an amended complaint naming as additional party defendants A. E. Slayton, Superintendent of the Virginia State Penitentiary; W. K. Cunningham, Director of the Division of Corrections; and Otis Brown, Director of the Department of Welfare and Institutions. The amended complaint alleged the following constitutional deprivations:

1. Cook was placed in isolation without notice of charges or of duration of confinement on October 29, 1968.

2. On November 20, 1968, while in isolation, Cook was attacked without provocation by an unnamed prison guard and subsequently not given medical treatment therefor.

3. On May 28, 1969, Cook was placed in C-cell (maximum security) without a hearing.

4. On March 27, 1970, Cook was again placed in isolation without a hearing or notice of charges.

Relief prayed for included money damages and a prayer for expunction of the records of these confinements from Cook's prison records.

This action went to trial before a jury on April 10 and 11, 1972. Because several of the preliminary legal issues raised, including that of whether Cook was entitled to a jury, were not determined, counsel agreed, upon the Court's suggestion, that the jury should be instructed to return a special verdict to establish the facts and that the issue of liability for damages would be developed in memoranda of law to be submitted to the Court. The jury's verdict read as follows:

### VERDICT

Was Mr. Cook, while in solitary confinement, struck across the back without justification, by an agent, servant or employee of the Commonwealth of Virginia? Answer "Yes" or "No."      YES

Was Mr. Cook, on any occasion, ever placed in solitary confinement or in C–Building without being informed of the reasons therefor, or without being given an opportunity to confront those making accusations against him, or without being given an opportunity to defend himself or seek assistance in defending himself against those charges which might have caused him to be placed in solitary confinement or in a C–Building cell? Answer "Yes" or "No."      YES

If you answered either of the foregoing questions "Yes" do you find that Mr. Cook has suffered any damages whatsoever as a result of the acts mentioned therein, that is, the beating or being placed in solitary confinement or in the C–Building. Answer "Yes" or "No." _____

| [Written by Foreman] | (1) Physical Damage | NO |
| | (2) Mental Damage | YES |

/s/ John A. Passeri, Jr.
Foreman

Date: 4–11–72

A subsequent motion for judgment N. O.V. of April 27, 1972, by the defendants was denied by the Court for the reason that said motion was untimely. On September 29, 1972, the Court solicited memoranda from counsel on the issue of whether the plaintiff is entitled to recover damages from the plaintiff. That issue, as well as procedural issues raised with respect to the further prosecution of this action, are now before the Court. Accordingly, the Court will proceed with this matter by determination of the following issues:

1. Is Cook entitled to a jury?

2. What elements must be proven in order to hold the defendants liable?

### I.

The Seventh Amendment guarantees the right of jury trial to suits at common law.[1] The few courts that have considered the issue have split on the question of whether a § 1983 suit is one "at common law." See, e. g., Lawton v. Nightingale, 345 F.Supp. 683 (N.D.Ohio 1972) (holding it isn't) and Harkless v. Sweeny Independent School District, 278 F.Supp. 632 (S.D.Tex.1968), rev'd. on other grounds, 427 F.2d 319 (5th Cir. 1970) (holding in effect it is). In the Court's opinion, the issue properly turns on a determination of whether § 1983 is a jurisdictional type statute which merely places a traditional type claim[2] in-

---

1. Rule 38(a), F.R.Civ.P., preserves the right of jury trial as declared by the Seventh Amendment or as given by statute. Section 1983 itself does not provide for jury, necessitating an examination of the effect of the Seventh Amendment.

2. The claim may arguably be in equity if an injunction or other equitable relief is sought or in law if money damages are sought.

volving state action within the framework of federal jurisdiction,[3] or whether the section creates a special statutory claim independent of common law. If the former, a § 1983 action seeking money damages is in essence a tort action, which is "legal" in nature, to which the right to jury trial directly attaches. See Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). If the latter, a § 1983 claim is a special action to which other analysis, infra, may be applied. See Lawton v. Nightingale, *supra.*

The Court concludes that the latter position is correct, that is, that § 1983 creates a separate federal right. Support for this view is found in Monroe v. Pape, 365 U.S. 167, 195, 81 S.Ct. 473, 488, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring):

> Since the suggested narrow construction of § 1983 presupposes that state measures were adequate to remedy unauthorized deprivations of constitutional rights and since the identical state relief could be obtained for state-authorized acts with the aid of Supreme Court review, this narrow construction would reduce the statute to having merely a jurisdictional function, shifting the load of federal supervision from the Supreme Court to the lower courts and providing a federal tribunal for fact findings in cases involving authorized action. Such a function could be justified on various grounds. It could, for example, be argued that the state courts would be less willing to find a constitutional violation in cases involving "authorized action" and that therefore the victim of such action would bear a greater burden in that he would more likely have to carry his case to this Court, and once here, might be bound by unfavorable state court findings. But the legislative debates do not disclose congressional concern about the bur-

dens of litigation placed upon the victims of "authorized" constitutional violations contrasted to the victims of unauthorized violations. Neither did Congress indicate an interest in relieving the burden placed on this Court in reviewing such cases.

> The statute becomes more than a jurisdictional provision only if one attributes to the enacting legislature the view that a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right. This view, by no means unrealistic as a common-sense matter, is, I believe, more consistent with the flavor of the legislative history than is a view that the primary purpose of the statute was to grant a lower court forum for fact findings. (Footnote omitted)

Additionally, the majority opinion, 365 U.S. at 180, 81 S.Ct. at 480, after reviewing the legislative history concludes:

> The debates were long and extensive. It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.

The United States Court of Appeals for the Fourth Circuit has given similar interpretation to § 1983 as a separate statutory cause of action. In Almond v. Kent, 459 F.2d 200, 203 (4th Cir. 1972), the Court stated:

> We agree that, to the extent that Almond's § 1983 complaint alleges a vio-

---

3. Technically jurisdiction lies pursuant to 28 U.S.C. § 1343 and its predecessors dating from 1875. See Hague v. CIO, 307 U.S. 496, 518, 59 S.Ct. 954, 83 L.Ed. 1423 (Stone, J. concurring) (1939).

lation of his constitutional rights resulting in personal injuries of the type that would be actionable at common law, the Virginia two-year period unquestionably applies. But this is so, not because there was a right of recovery at common law but because there was a violation of a constitutional right not to be beaten. We think it follows that the Virginia two-year period applies to all other rights which may be redressed under § 1983 by the recovery of money damages. Section 1983 creates a federal cause of action, unknown at common law, "[for] the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] . . ." This right of recovery depends upon federal considerations, and it is not one which is concerned with the archaic concepts of survivability of the common law.

\* \* \* \* \* \*

In essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person. In the broad sense, every cause of action under § 1983 which is well-founded results from "personal injuries."

(Citations omitted)

■ The disassociation of § 1983 from common law is clearly imparted by the above-quoted language. That conclusion, however, is not finally dispositive of the issue. Although it is clear that a § 1983 suit for money damages is not a common law tort suit in new jurisdictional clothing, it still remains to be determined whether the Seventh Amendment right to jury trial attaches to the section as a federal statutory claim. Simmons v. Avisco, 350 F.2d 1012 (4th Cir. 1965).

The general rule in this context is that "if a new cause of action is created

by Congress, and nothing is said about the mode of trial, the courts must look to the nearest historical analogy to decide if there is a right to a jury." 9 Wright & Miller, Federal Practice & Procedure, § 2302 (1971). See Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L. Ed.2d 691 (1963); Ochoa v. American Oil Co., 338 F.Supp. 914 (S.D.Tex.1972). While this historical inquiry appears unnecessary with respect to statutory proceedings under federal law, see NLRB v. Jones and Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), the approach has been treated as one of constitutional magnitude with respect to new causes of action, for

> To hold otherwise would be to open the way for Congress to nullify the Constitutional right of trial by jury by mere statutory enactments. United States v. Jepson, 90 F.Supp. 983, 986 (D.N.J.1950). See also, Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).

The resultant search for historical analogy has been apologized for because of its "reek . . . of the study," Damsky v. Zavatt, 289 F.2d 46, 48 (2d Cir. 1961), and criticized for what has been termed its more proper reek "of the museum." *Damsky, supra*, at 59 (Clark, J., dissenting). See Wright and Miller, *supra*. Although the Supreme Court has alleviated some of the onerous nature of this inquiry in *Dairy Queen, supra*, and in Beacon Theaters v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L. Ed.2d 988 (1959), by making clear that the search must concern itself with the basic nature of the claim asserted rather than the historical procedures utilized to litigate it, the Court is nevertheless satisfied that federally created causes of action must be examined within the purview of the Seventh Amendment.

■ Turning then to Cook's present money damage claim, the Court has no doubt that the analogy of the cause of action asserted here is a claim in tort.[4]

4. Further definition, for example whether or not this is a trespass to the person, is unnecessary, as the historical examination includes years as late as 1938, at which

Accordingly, the right of jury trial attaches.

The Court reaches this conclusion with severe misgivings. These have been well stated in Lawton v. Nightingale, *supra*, 345 F.Supp. 683:

> If a jury could be resorted to in actions brought under this statute, the very evil the statute is designed to prevent would often be attained. The person seeking to vindicate an unpopular right could never succeed before a jury drawn from a populace mainly opposed to his views.

While this problem may not arise in § 1983 actions seeking only injunctive relief, it nevertheless lurks ominously behind every suit for money damages under § 1983.

■ Additionally, legislative history reveals that the Congress was motivated in part to pass the act by what it viewed as a failure of southern juries to justly consider the claims of Negro litigants in state courts. See Monroe v. Pape, *supra*, 365 U.S. at 177, et seq., 81 S.Ct. 473; Cong.Globe, 42d Con. 1st Sess. at 334, 505. The Court has no doubt that today's juries are more openminded,[5] and hence must at this stage, absent contrary guidance from its appellate courts, content itself in the conclusion that the Constitution contemplates that persons seeking monetary relief in actions at law must carry their burden to a jury if either of the parties so demands. It is the fundamental nature of that right which the Supreme Court has found to be pervasive in its *Beacon Theaters* and *Dairy Queen* decisions.

## II.

The immediate impact of this conclusion upon Cook is that he has the right to proceed with his damage claims to the jury.[6] In the hope of delimiting the scope of that effort, the Court will set forth the elements which he must prove to gain recovery.

In support of his position, Cook urges the Court to depart from numerous precedential holdings with regard to liability under § 1983. Among those holdings are the existing rules that the defendants are not liable in their official capacities by virtue of the Eleventh Amendment, and that *respondeat superior* does not apply under this section. This Court cannot do so for reasons stated in Landman v. Royster, 354 F. Supp. 1302, No. 170–69–R (E.D.Va. 1973), duty-bound as it is to follow the rulings of its appellate court. Cook's arguments of this nature should more properly be addressed to appellate courts.

The Court has fully discussed the question of liability under § 1983 in *Landman, supra*, so that a succinct summary will serve for these purposes.

### A. Liability in Official Capacity.

■ Damages may not be recovered against the defendants in their official capacities as a judgment against them as such would in essence be a judgment against the state. Recovery in that manner is proscribed by Monroe v. Pape, supra, 365 U.S. 167, 81 S.Ct. 473, and the Eleventh Amendment.

### B. Personal Liability.

■ A *prima facie* claim for damages may be made by proving that the con-

---

time law and equity actions were merged under the federal rules. See Wright & Miller, *supra*.

The Court notes that the language of § 1983 lends itself to this type of analysis: The section provides that the wrongdoer thereunder "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." While legislative history on this language is not helpful, it is a fair inference that the Congress envisioned this section with

an eye to creating a federal cause of action, which could be prosecuted in the usual forms of litigation, rather than the creation of a new type of proceeding.

5. See, Note, 52 Va.L.R. 1069 (1966) on developments in combatting jury discrimination.

6. Concomitantly, the Court is precluded from its own fact finding with respect to the open issues upon the records before it.

duct complained of was engaged in under color of state law and that such conduct subjected the plaintiff to a deprivation of constitutional rights. Both these elements are supported factually by the verdict of the jury upon the first trial and by this Court's conclusions of law in Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971) and 354 F.Supp. 1302, No. 170–69–R (1973). Still open for jury determination is the question of whether the defendants personally engaged in conduct which caused constitutional deprivations.

■ Said conduct cannot be attributed to the defendants by virtue of *respondeat superior*. Rather the defendants must have actual knowledge of the challenged actions of his subordinates and acquiesce in them. Proving same is, as a matter of practicality, easier if the plaintiff can show a pattern of close supervision by the defendants and that the acts themselves complained of were part of a consistent pattern of conduct of the subordinates. In that event, it would be logical and proper to assume acquiescence and knowledge of the defendants absent a specific showing to the contrary.

■ Additionally, it should be noted that damages must be proven to arise from the constitutional deprivations, not from the conduct itself. This distinction takes on meaning when examined in the setting of *Landman, supra.* Plaintiffs Landman, Wansley and Mason gained recovery because it was shown that defendant Cunningham's actions in this respect was motivated by a personal animus. Absent same, the record is clear that these three prisoners would not—had their due process rights been preserved—have been subjected to the treatment they received. Plaintiffs Hood and Arey did not recover because the Court found that their treatment resulted from their own misbehavior, that is, that even had they been afforded due

process, their incarceration in the manner challenged would likely have resulted anyway. The Court does not state here that animus on the part of the defendants is a necessary element of personal conduct to be proved, but rather that damages for treatment improper by virtue of lack of due process procedures can only be proved upon a showing that such treatment would not have flowed to a prisoner given his due process rights. In the cases of Landman, Wansley and Mason the Court concluded that their treatment, but for the animus of defendant Cunningham, would have been different.

Applying these principles to the present case, the following controverted issues of fact remain:

1. Would Cook, had he been given his due process rights, have received the same treatment? If the answer is yes, Cook may not recover of the defendants.

2. If Cook would not have received the same treatment, did any of the defendants have personal knowledge of the treatment actually received and acquiesce in same? This inquiry must be directed with respect to the beating and to the confinements in isolation and C-cell. If the answer is no, then Cook may not recover.

3. If the answer to (2) is yes, what is the measure of damages?

For the reason stated *supra,* Cook has a right to present these questions to a jury. The Court will treat these outstanding controverted issues as issues of fact to be decided pursuant to a motion for summary judgment and accordingly will direct a jury trial with respect to same in accordance with Rule 56(d), F.R.Civ.P. Should Cook choose to waive a jury, the Court will give further consideration to this matter in such manner as the Court and the parties deem appropriate.

An order shall issue.