Renee THOMPSON, a minor, and John and Dorine Thompson, her parents and natural guardians, Plaintiffs,

v.

The Honorable Frank J. MONTEMURO, Individually and as Administrative Judge of the Family Division, Philadelphia Court of Common Pleas, et al., Defendants.

Civ. A. No. 73-2896.

United States District Court,
E. D. Pennsylvania.

Oct. 23, 1974.

Lawrence J. Fox, Philadelphia, Pa., for plaintiffs.

Stephen Arinson, Asst. City Solicitor, Marvin Comisky, Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

This civil rights action was brought to recover damages allegedly suffered by a minor while detained at a juvenile institution. Presently before the court are defendants' motions to dismiss.

### I. Introduction and Facts

From May 4, 1973, until June 15, 1973, the plaintiff, Renee Thompson, was confined at the Philadelphia Youth Study Center on a charge of having run away from home. In the complaint filed on her behalf and that of her parents, it is alleged that she was mistreated and denied her civil rights in violation of 42 U.S.C. § 1983. The named defendants include the several employees actually alleged to have mistreated the plaintiff, the executive director and "head supervisor" of the Youth Study Center, and the Honorable Frank J. Montemuro, Administrative Judge of the Family Court Division of the Philadelphia Court of Common Pleas.

Presently before the court are defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) the complaint merely alleges tortious conduct and fails to state a cause of action cognizable under the Civil Rights Act; (2) the complaint lacks the factual specificity necessary to state a Civil Rights action in this Circuit; (3) Judge Montemuro and the acting and executive directors of the Youth Study Center are shielded from suit under the doctrines of judicial immunity and/or quasi-judicial immunity; (4) Judge Montemuro and the executive and acting directors of the Youth Study Center cannot be held liable for acts committed by others under the doctrine of *respondeat superior*; and (5) in the absence of a substantial

federal claim there exists no basis for the exercise of pendent jurisdiction by this court. For the reasons expressed herein, I conclude that defendants' motion should be granted with respect to the defendants Palmer and Judge Montemuro but that in all other regards the motion must be denied.

■■ It is hornbook law that in considering a motion to dismiss for failure to state a claim for which relief can be granted, a court will consider as admitted and view in the light most favorable to the plaintiff all facts contained within the complaint and every inference fairly deducible therefrom. Melo-Sonics Corp. v. Cropp, 342 F.2d 856, 858–859 (3d Cir. 1965). And a complaint should not be dismissed unless it appears to a legal certainty that the plaintiff would not be entitled to relief under any set of facts which could be proved in support of his claim. Jenkins v. McKeithen, 395 U.S. 411, 422, 89 S.Ct. 1843, 1849, 23 L. Ed.2d 404 (1963). Bearing in mind these principles, I shall deal with defendants' contentions *seriatem.*

## II. Failure to State a Claim Under the Civil Rights Act

Broadly stated, defendants' first contention is that the conduct complained of is not sufficient to constitute a claim under 42 U.S.C. § 1983. I disagree. Plaintiff alleges, *inter alia,* that without provocation she was assaulted by personnel of the Youth Study Center with a shoe and a blackjack, that she was denied medical treatment for asthma and for injuries sustained in the previously-alleged assaults, that she was placed in solitary confinement without reason, and that the Center's officials and Judge Montemuro conspired to "cover-up" the facts of plaintiff's alleged mistreatment.

■ While prison officials have wide discretionary authority to exercise disciplinary control over inmates, Wilson v. Prasse, 325 F.Supp. 9, 12 (W.D.Pa. 1971), affirmed 463 F.2d 109 (3d Cir. 1972), it is well-settled that persons in jails, penitentiaries, and other places of confinement have a federal Constitutional right to be free from beatings, physical torture, and maltreatment by custodial officials and employees, and that this right can be vindicated in an action under Section 1983, Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973); Brown v. Brown, 368 F.2d 992 (9th Cir. 1966).[1]

The leading case concerning abuse of unconvicted suspects or prisoners in this circuit is Howell v. Cataldi, 464 F.2d 272 (3d Cir. 1972). There the plaintiff, a diabetic,[2] who was being detained after arrest but before conviction, alleged that police officers beat him with a blackjack and a wooden plank. The court held that even if the plaintiff was resisting the officers, the allegations went far beyond the pale of permissible police conduct in contravention of the Eighth Amendment and constituted a prima facie case of cruel and unusual punishment against any identifiable participating officers.

■ In Buszka v. Johnson, 351 F. Supp. 771 (E.D.Pa.1972), Judge Newcomer had occasion to review the tests devised by other courts in deciding when tortious conduct gave use to a Section 1983 claim. He stated:

Many cases describe the necessary conduct as "exceptional circumstances." See, Henderson v. Pate, 409

---

1. Indeed, the only cases which support defendants' contention that tortious conduct inflicted upon a prisoner or detainee may not give rise to a Section 1983 claim are Davis v. United States, 439 F.2d 1118 (8th Cir. 1971) and Cole v. Smith, 344 F.2d 721 (8th Cir. 1965). As Judge Friendly observed in Johnson v. Glick, 481 F.2d 1028, 1030 (2d Cir. 1973), however, the Eighth Circuit stands alone in taking that view.

2. Plaintiff seeks to analogize her low normal intelligence to Howell's diabetic condition. Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, at 6. In view of my disposition of plaintiff's allegations of physical abuse, however, such an analogy is unnecessary.

F.2d 507, 508 (7th Cir. 1969); United States ex rel. Lawrence v. Ragen, 323 F.2d 410 (7th Cir. 1963); Eaton v. Ciccone, 283 F.Supp. 75 (W.D.Mo. 1966). Other courts require that the alleged conduct be "barbaric." Ford v. Board of Managers of New Jersey State Prison, supra, 407 F.2d at 940. Still another court has characterized conduct as being cruel and unusual punishment when it shocks the general conscience or is intolerable to fundamental fairness. Jordan v. Fitzharris, 257 F.Supp. 674, 679 (N.D.Cal. 1966).

351 F.Supp. at 773–774. Under any of these tests, I am unwilling to hold as a matter of law that the beatings allegedly inflicted upon the plaintiff do not state a claim within the comprehension of the Civil Rights Act.

■■■ With respect to plaintiff's allegation of a denial of medical care, a formidable burden must be surmounted in order to establish a cause of action for improper treatment of a prisoner in this circuit. See Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970). Nevertheless, I am unable to conclude that the confinement of a fifteen year old complaining of asthma, headaches, dizziness, and a heat rash, in a totally unventilated room for three days during an early summer heatwave, during which she was offered only two aspirin as treatment for her symptoms, does not rise to the level of "conduct so cruel or unusual as to approach a violation of the Eighth Amendment's prohibition of such punishment". Gittlemacker v. Prasse, supra; see also Brown v. Cliff, 341 F. Supp. 177 (E.D.Pa.1972).

■■■ Although solitary confinement is not in and of itself violative of the Eighth Amendment, Ford v. Board of Managers of New Jersey State Prison, 407 F.2d 937 (3d Cir. 1969); Buszka v. Johnson, supra, 351 F.Supp. at 773, the transfer of a prisoner from the general prison population to solitary confinement without either notice of the charges or a hearing does not comport with minimal due process requirements absent unusual circumstances, Gray v. Creamer, 465 F.2d 179 (3d Cir. 1972). Plaintiff, a juvenile committed into the hands of the state for psychological testing on a noncriminal charge of running away from home, was at least as deserving of the protection of her due process rights as a convicted and incarcerated felon. See In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

There is, moreover, persuasive evidence that solitary confinement under degrading conditions has an especially devastating impact upon a minor's sense of identity. Lollis v. New York State Department of Social Services, 322 F. Supp. 473 (S.D.N.Y.1970), modified 328 F.Supp. 1115 (1971), involved consolidated class actions brought by two minors, neither of whom had been accused or convicted of a crime, but who had been placed in solitary confinement after engaging in fights while incarcerated in state institutions. After a careful review of the conditions of confinement, psychological evidence presented by the minors with respect to the injurious nature of solitary confinement, and expert opinions concerning the deleterious effect of such confinement, the court concluded that a Section 1983 case had been stated. Plaintiff's allegation of solitary confinement under miserable circumstances is sufficient to withstand defendant's motion to dismiss.

Plaintiff's final allegation is that Montone and Judge Montemuro engaged in a conspiracy both of sanctions and silence to cover-up the details of her mistreatment at the Youth Study Center. In furtherance of this cover-up, plaintiff contends, inter alia, that at defendant Montone's behest: (1) two employees of the Center were suspended from their positions for writing letters to the mayor in which they described the blackjacing of plaintiff; (2) one of these employees was advised to abandon the appeal of her suspension or else have her working hours changed so as to inconvenience her; and (3) a petition was

circulated castigating these two employees.

■ Defendants contend that the foregoing allegations are insufficient to state a Section 1983 claim under the holding of Brown v. Sielaff, 474 F.2d 826 (3d Cir. 1973). Although defendants' argument is somewhat more persuasive here than with respect to plaintiff's other claims, I neverthelsss am constrained again to disagree. In Brown, a state prisoner's sole contention that the state corrections commissioner had attempted to conceal abuse by prison guards was held to be insufficiently precise to constitute an allegation of a Constitutional deprivation sustained by the prisoner at the hands of the commissioner. In the present case, however, plaintiff has alleged with a substantial degree of particularity a concerted effort to silence two employees favorably disposed to plaintiff and an investigative "hearing" wherein evidence unfavorable to the defendants was not received. While I believe the allegations of a conspiracy to deprive plaintiff of her right to due process might equally appropriately fall within the purview of the Civil Rights Act of 1861, 42 U.S.C. § 1985(3); Picking v. Pennsylvania R. Co., 151 F.2d 240 (3d Cir. 1945), rehearing denied 152 F.2d 753, overruled in part Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966), cert. denied, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967), I must conclude that plaintiffs' allegations against the defendants individually state a cause of action under Section 1983.

### III. Failure to Plead With Specificity

■ Defendants' second broad argument is that plaintiff's allegations lack the factual specificity required to state a claim under Section 1983 in the Third Circuit. In Negrich v. Hohn, 379 F.2d 213 (3d Cir. 1967), the Court of Appeals adopted the rule that complaints in civil rights cases must be specifically pleaded in order to avoid a motion to dismiss. See also Kauffman v. Moss, 420 F.2d 1270 (3d Cir. 1970). After a careful review of plaintiff's contentions as recited at length in Part II of this opinion, I am persuaded that her allegations are of sufficient particularity to withstand defendants' attack. On this ground, too, defendants' motion is denied.

### IV. Immunity of Judge Montemuro from Liability Under 42 U.S.C. § 1983

In her complaint and memorandum in opposition to defendants' motion to dismiss, plaintiff contends that Judge Montemuro engaged in a campaign to conceal the true facts of her treatment during her detention at the Center by failing to investigate her complaint and then by presiding over some sort of sham "hearing" into her allegations.

In response to these charges, Judge Montemuro contends that he possesses complete judicial immunity from liability for damages arising from plaintiff's allegations, and alternatively he asserts that he has no responsibility whatsoever over the Youth Study Center other than as a member of the Board of Judges which appoints the Board of Managers for the Center. Plaintiff, in her memorandum in opposition to the present motion relies upon Judge Montemuro's alternative theory, and argues that he therefore is not immune from liability insofar as he undertook any extrajudicial action to conceal the beating incident. Adopting defendants' first theory, I disagree.

■ Although the perimeters of the doctrine of judicial immunity are not limitless, see, e. g., Gregory v. Thompson, 500 F.2d 59 (9th Cir., filed July 2, 1974); Lucarell v. McNair, 453 F.2d 836, 838 (6th Cir. 1972), they are broad indeed. In Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Supreme Court consciously decided that as a matter of public policy, judges should be immune from damage suits under Section 1983 for actions taken within the course of their judicial duties, even when such actions are alleged

to be malicious or corrupt. As Chief Justice Warren explained in Pierson:

> Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." (Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868), quoted in Bradley v. Fisher, supra, 349, note, at 350.)

. . .

386 U.S. at 553–554, 87 S.Ct. at 1217–1218.

▪ So extensive is the doctrine that a judge loses his immunity from actions for damages only when he acts in the clear absence of jurisdiction, Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872); Lynch v. Johnson, 420 F.2d 818 (6th Cir. 1970), or pursues non-judicial activities, Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966), cert. denied, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967). The courts of this Circuit have on numerous occasions applied the doctrine in actions for damages, as contrasted with actions seeking equitable relief, against state judges under the Civil Rights Act. See, e. g., Gaito v. Strauss, 249 F.Supp. 923 (W.D.Pa.1966), aff'd, 368 F.2d 787 (3d Cir. 1966); Hamilton v. Jamieson, 355 F.Supp. 290 (E.D.Pa.1973).

▪ In the only paragraph of her complaint which alleges wrongful conduct on the part of Judge Montemuro, Miss Thompson contends that he and defendant Montone "actively engaged in efforts to conceal the true facts surrounding the above described events and have refused to investigate openly, impartially, and thoroughly the said events." Apparently fearing that this charge alone was insufficient in and of itself to state a cause of action against Judge Montemuro, see Brown v. Sielaff, supra, plaintiff in her memorandum alluded to a hearing, allegedly presided over by the judge, concerning these incidents. Plaintiff contends that Judge Montemuro neglected to summon certain crucial witnesses to attend, among them the two employees of the Center who had written to the mayor.

Even if the allegation of such a hearing were to be incorporated by amendment into the original complaint, it would be fatally defective for ignoring the judicial responsibility of Judge Montemuro, as Administrative Judge of the Family Court Division, over the welfare of plaintiff as a ward of the court. In this regard, any hearing held by Judge Montemuro plainly would be one of the "precise functions" of judges, cloaked with judicial immunity, to which our Court of Appeals referred in Safeguard Mutual Insurance Co. v. Miller, 472 F.2d 732, 733 (3d Cir. 1973).

▪ Moreover, even should Judge Montemuro have some administrative duties in connection with the Center, a number of cases in this Circuit make clear that no liability can be predicated against him on a theory of *respondeat superior* for acts committed by others. See, e. g., Ammlung v. City of Chester, 355 F.Supp. 1300, 1305–1306 (E.D.Pa. 1973); Hamilton v. Jamieson, 355 F.Supp. 290, 294 (E.D.Pa.1973). The complaint will, therefore, be dismissed as to Judge Montemuro.

## V. Immunity of Defendants Montone and Palmer

Defendants Montone and Palmer, the executive director and supervisor of the Youth Study Center, respectively, assert that they are immune from liability in the present action under the doctrine of judicial or quasi-judicial immunity. I disagree.

Although, as previously noted, the immunity of the judiciary is solidly established, it is equally clear that the doctrine ought not to be applied broadly and indiscriminately, but only to the extent necessary to effectuate its purpose, Doe v. McMillan, 412 U.S. 306, 310–325, 93 S.Ct. 2018, 2028–2029, 36 L.Ed.2d 912 (1973); Barr v. Matteo, 360 U.S. 564, 573, 79 S.Ct. 1335, 1340, 3 L.Ed.2d 1434 (1959), i. e., "to insulate judges from intimidation that might rob them of the independence so crucial to the public's interest in principled and fearless decision-making," Gregory v. Thompson, supra, 500 F.2d at 63.

Public officials are not immune simply because they operate in a discretionary situation; they may be held liable when they act in bad faith or in a manner which is arbitrary, fanciful, or clearly unreasonable. Littleton v. Berbling, 468 F.2d 389, 412 (7th Cir. 1972), vacated and remanded on other grounds sub nom. Spomer v. Littleton, 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974); O'Brien v. Galloway, 362 F. Supp. 901 (D.Del.1973).

Rather than by judicial or quasi-judicial immunity, Montone and Palmer would seem rather to be shielded, if at all, by the immunity sometimes afforded to executive and administrative personnel. Of this immunity the Supreme Court recently has stated:

[A] qualified immunity is available to officers of the executive branch of Government, the variation dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good faith belief, that affords basis for qualified immunity of executive officers for acts performed in the course of official conduct.

Scheuer v. Rhodes, 416 U.S. 232, 247, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974).

I am persuaded, however, that Palmer and Montone are ineligible to avail themselves of even this variety of immunity. Any number of courts, including those in this district, have held that where direct personal involvement, as opposed to liability for the actions of subordinates, is alleged, immunity is no defense to liability. In United States ex rel. Bracey v. Grenoble, 356 F.Supp. 673 (E.D.Pa.1973), for example, Chief Judge Lord ruled that an acting major who was in charge of prison guards and had complete control over their actions was liable to a prisoner for injuries inflicted upon him in violation of his constitutional rights by the guards:

When a superior personally directs his subordinates to do acts, or when he has actual knowledge of their acts and acquiesces in them, he is regarded as having been personally involved and is liable for his own conduct, not on the basis of *respondeat superior* but because of his direct personal involvement. Landman v. Royster, 354 F. Supp. 1302 (E.D.Va.1973); Wright v. McMann, 460 F.2d 126, 135 (C.A. 2, 1972) . . .

Id. at 674–675. Similarly, in Cook v. Cox, 357 F.Supp. 120 (E.D.Va.1973), the court concluded that prison officials could be held personally liable for deprivations suffered by the plaintiff while he was incarcerated in a state penitentiary if he proved that: (1) the alleged conduct was engaged in under color of state law and subjected him to a deprivation of Constitutional rights, and (2) the defendants had actual knowledge of the alleged acts and acquiesced in them. See also Lathan v. Oswald, 359 F.Supp. 85 (S.D.N.Y.1973); United States ex rel. Jones v. Rundle, 358 F.Supp. 939 (E.D.Pa.1973).

Miss Thompson's status while being detained at the Youth Study Center was, in my view, especially analogous to that of the plaintiff in Fidtler v. Hendricks, 317 F.Supp. 738 (E.D.Pa.1970), where it was held that the superintendent of a Pennsylvania state prison had no immunity from suit by an unsentenced inmate who had been required to perform physi-

cal labor for the general upkeep and maintenance of the prison.

In paragraph 41 plaintiff alleges that defendant Montone "attempted to conceal the true facts surrounding these events by harassment of Youth Study Center employees in an effort to discredit them and to force them to remain silent regarding the events and circumstances surrounding the beating . . .", and enumerates specific actions allegedly taken in pursuit of this "cover-up." Paragraph 41 therefore alleges sufficient *direct personal involvement* on the part of Montone, to defeat a motion to dismiss. *See* Downs v. Department of Public Welfare, 368 F.Supp. 454 (E.D.Pa.1973); *see also* Moon v. Winfield, 368 F.Supp. 843 (N.D.Ill. 1973), where it was held that a police superintendent who had retained a police officer despite numerous misconduct complaints involving citizens could be held liable under Section 1983 for the policemen's assault on an individual, even though the superintendent did not personally participate in the assault.

Inasmuch as the complaint only alleges liability against defendant Palmer under a theory of *respondeat superior* as acting executive director of the Youth Study Center at certain times relevant to the cause of action, the complaint must be dismissed as to him. *See, e. g.*, Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir. 1973). Jennings v. Davis, 476 F.2d 1271, 1274 (8th Cir. 1973); Downs v. Department of Public Welfare, supra, 368 F.Supp. at 463-464.

VI. Pendent Jurisdiction

Defendants lastly contend that this court should decline to exercise its pendent jurisdiction over the nonfederal claims joined with plaintiff's federal claim. In United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the Supreme Court held that as a matter of constitutional power, pendent jurisdiction exists whenever the state and federal claims "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." Although *Gibbs* admittedly broadened the discretion of a district court to refuse to hear pendent claims, 383 U.S. at 726, 86 S.Ct. at 1139; C.A. Wright, Law of Federal Courts (2d ed.) § 19, at 64–65, the Supreme Court said only this past term:

> . . . it is evident from *Gibbs* that pendent state law claims are not always, or even almost always, to be dismissed and not adjudicated. On the contrary, given advantages of economy and convenience and no unfairness to litigants, *Gibbs* contemplates adjudication of these claims.

Hagans v. Lavine, 415 U.S. 528, 545, 94 S.Ct. 1372, 1383, 39 L.Ed.2d 577 (1974). See also Phillips v. Trello, 502 F.2d 1000 (3d Cir., filed June 13, 1974).

Here, I have concluded that plaintiff has stated a substantial Section 1983 against defendant Montone arising out of her detention at the Youth Study Center. Accordingly, this court will take jurisdiction over any claim against the other named defendants arising under the laws of the Commonwealth of Pennsylvania.