**HAZELTINE RESEARCH, INC.,** Plaintiff and Counter-Defendant, Appellant,

v.

**ZENITH RADIO CORPORATION,** Defendant and Counter-Claimant, Appellee.

**Nos. 15246, 15563.**

United States Court of Appeals
Seventh Circuit.

Oct. 27, 1969.

John W. Thomas, C. Lee Cook, Jr., Joseph V. Giffin, Chicago, Ill., John T. Chadwell, Victor P. Kayser, Chicago, Ill., M. Hudson Rathburn, Chicago, Ill., Laurence B. Dodds, Great Neck, N. Y., for

Hazeltine Research, Inc., plaintiff-appellant; Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., Chadwell, Keck, Kayser, Ruggles & McLaren, Chicago, Ill., of counsel.

Thomas C. McConnell, Philip J. Curtis, Francis J. McConnell, Chicago, Ill., Dugald S. McDougall, Chicago, Ill., Francis W. Crotty, Chicago, Ill., John Borst, Jr., Chicago, Ill., for Zenith Radio Corporation, appellee; McConnell, Freeman, Curtis & McConnell, Chicago, Ill., of counsel.

Before CASTLE, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.

KILEY, Circuit Judge.

This court, on December 19, 1967, filed its decision, 388 F.2d 25 (7th Cir. 1967), in the above causes and, so far as pertinent now, affirmed the judgment awarding $150,000, treble damages, to Zenith Radio Corporation for misuse by Hazeltine Research, Inc. (HRI) of its domestic patents, but struck paragraph A of the related injunction, issued to restrain HRI from imposing unlawful conditions on those patents. We reversed the judgment in Zenith's favor for $38,000,000, treble damages, based on HRI's unlawful participation in the Canadian, English and Australian patent pools, and *ipso facto* set aside an injunction restraining HRI's further unlawful antitrust activity in these foreign patent pools.

On appeal to the Supreme Court, the treble damage award with respect to the domestic patents was not challenged. The Court, 395 U.S. 100, 89 S.Ct. 1562, 3 L.Ed.2d 129 (1968), reversed our decision striking paragraph A of the injunction and remanded that part to this court for further consideration. The Court also reversed our decision setting aside the award of damages flowing from the unlawful activity of the Canadian pool and remanded that issue to us to consider the effect of HRI's affirmative release and statute of limitations defenses on the award. In addition, the Court reinstated the related injunction which this court had set aside with that treble damage judgment for Zenith.[1] The Supreme Court reversed our decision with respect to the Canadian patent pool because it concluded we erred in our determination that Zenith had failed to prove the "fact" of damage in Canada.

After the Supreme Court mandate was filed in this court, we gave leave to HRI and Zenith to file supplemental authorities. Zenith thereupon "abandon[ed] its request" originally made in this court to reinstate paragraph A which this court had struck. The following questions are before us: (1) whether Zenith's injury during the statutory damage period resulted to any extent from HRI's conduct preceding that period and, if so, what effect releases given by Zenith in 1957 had on Zenith's recovery; (2) what effect the statute of limitations had on HRI's liability; and (3) whether the award of damages was excessive. These points had been raised before us by HRI in the first appeal, but we saw no need of passing on them in view of our reversal of the judgment for Zenith.

We have examined the issues now before us in the light of the Supreme Court opinion and the supplemental authorities cited to us. We vacate the judgment for Zenith with respect to the Canadian pool in the amount of $6,297,391, trebled, and remand for further proceedings with respect to the award of damages.

## THE AFFIRMATIVE DEFENSES

After the evidence at the trial was closed HRI moved for leave to file the affirmative defenses in bar of Zenith's recovery. Zenith's counsel objected to the filing of the defenses on the ground that they came too late and were waived.

---

1. The Supreme Court affirmed this court's decision vacating judgments in Zenith's favor against Hazeltine Corporation. It affirmed our decision with respect to setting aside the treble damage judgment so far as it was based on the patent pool activities in England and Australia.

The district court, however, permitted the defenses to be filed and thereafter denied HRI's motion for judgment based on the defenses. The Supreme Court noted that the district court's refusal to disturb the findings it had already made with respect to the Canadian pool was a rejection of the defenses either on the merits or on the ground that the defenses had been waived under Fed.R.Civ.P. 12(h). 395 U.S. 100, 117, n. 13, 89 S.Ct. 1562. It is our view that the court's ruling was not on the basis of waiver, but because the defenses on their merits did not bar Zenith's recovery. We turn therefore to consideration of the correctness of the district court's ruling.

The relevant four year damage period was measured from May 22, 1963, when Zenith filed its counterclaim.[2] The cut-off date therefore was May 22, 1959. HRI relies upon releases given September 27, 1957, by Zenith to RCA, General Electric, and Western Electric in settlement of Zenith's counterclaim in the case of RCA v. The Rauland Corp. and Zenith Radio Corp., No. 48 C 1818 (N.D.Ill. 1957), in contending that Zenith's claim is now barred.

The Supreme Court in noting that the district court did not date the events as occurring before or after the May 22, 1959 start of the damage period, said. "[t]he damage award was confined to *injuries* sustained during the statutory period, but the trial court apparently deemed it immaterial whether the damage-causing acts occurred before or after the start of the damage period." 395 U.S. 100, 116, 89 S.Ct. 1562, 1572 (1968). Damages were awarded, the Court said, on the assumption that were it not for the conspiracy, Zenith would have had sixteen per cent of the Canadian market instead of its actual three per cent on May 22, 1959 and throughout the damage period. The Court then stated that since the district court attributed the de-ficient share on May 22, 1959 to the conduct of the pool, that conduct necessarily preceded the deficiency, and therefore pre-damage period conduct necessarily resulted in some part of the damages awarded.

■ Since HRI was an unnamed joint tortfeasor, as admitted by Zenith at trial, with its co-conspirators in the Canadian pool who were named in the *Rauland* case, and Zenith did not reserve its right against HRI, the releases given by Zenith clearly barred recovery from HRI of past, present and *future damages* flowing from any misconduct of HRI prior to the dates of the releases. Twentieth Century-Fox Film Corp. v. Winchester Drive-In Theatre, 351 F.2d 925, 941 (9th Cir. 1965), cert. denied, 382 U.S. 1011, 86 S.Ct. 620, 15 L.Ed.2d 526 (1966); Dura Electric Lamp Co. v. Westinghouse Electric Corp., 249 F.2d 5 (3d Cir. 1957). Our inquiry therefore is narrowed to the question of the effect of the statute of limitations on Zenith's right of recovery for post-release misconduct.

■ It is "well settled * * * that no civil action lies for a conspiracy unless there be an overt act that results in damage to the plaintiff." Nalle v. Oyster, 230 U.S. 165, 182, 33 S.Ct. 1043, 1048, 57 L.Ed. 1439 (1913). Consequently, in the case before us the mere existence of the conspiracy following the 1957 releases does not itself give rise to Zenith's cause of action. The law with respect to the statute of limitations in Sec. 15b of the Clayton Act is that the period commences to run from the last overt act of the conspiracy. Crummer Co. v. DuPont, 223 F.2d 238, 247–248 (5th Cir.), cert. denied, 350 U.S. 848, 76 S.Ct. 85, 100 L.Ed. 755 (1955); Momand v. Universal Film Exchange, 43 F.Supp. 996, 1007 (D.Mass.1942), aff'd 172 F.2d 37, 47 (1948); Steiner v. Twentieth Century-Fox Film Corp., 232 F.2d 190, 194 (9th Cir. 1956); Century Hardware

---

2. See 395 U.S. 100, 108, 89 S.Ct. 1562 (1968). 15 U.S.C. § 15b reads:

Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued.

Corp. v. Powernail Co., 282 F.Supp. 223, 227 (E.D.Wis.1968). In Century Hardware, the district court construed this court's decisions in Emich Motor Co. v. General Motors Corp., 229 F.2d 714 (7th Cir. 1956), and Baldwin v. Loew's, Inc., 312 F.2d 387 (7th Cir. 1963), as stating the law of this Circuit to be in accordance with the foregoing decisions.

■ In Hanover Shoe, Inc. v. United Shoe Machinery Corp., 377 F.2d 776 (3d Cir.1967) (supplemental opinion at 793–795), the following rule was applied:

> [W]here the repeated and measurable invasion of a plaintiff's rights occurs both outside the statutory period and also within it, the fact that some of the injury and damage occurred outside the statutory period does not affect the plaintiff's right to recover for the separate invasion of its rights which occurred within the period.

The rule as applied in that case was approved by the Supreme Court on appeal of the *Hanover* case. See 392 U.S. 481, 502 n. 15, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). Thus, even though Zenith may have had a cause of action for overt acts of the conspiracy prior to May 22, 1959—the beginning of the damage period—the fact that it did not then file suit does not preclude its present suit for damages suffered within the damage period as a result of an overt act repetitious of the unlawful pre-period acts occurring in the damage period.

■■ HRI conceded at trial that the Canadian pools existed into the damage period. The record establishes that on June 5, 1959, the Canadian pool wrote Zenith claiming that it was infringing pool patents by its distribution of American-made televisions and radios in Can-

ada. This act was substantially similar to overt acts occurring in the pre-damage period. Accordingly, Zenith, claiming the right to recover for damages suffered only in the statutory period, is entitled to recover for the damages it suffered as a result of the June 5 injury.[3]

We conclude therefore that the district court's denial of the motion to bar Zenith's recovery completely on the ground of the releases and the running of the statute of limitations was not erroneous.

## EXCESSIVENESS OF THE AWARD

We think this issue is not now ripe for decision because HRI had no opportunity, after the district court permitted filing of HRI's affirmative defenses, to introduce evidence relevant to the affirmative defenses. We vacate the district court's award of $6,297,371—trebled to $18,892,-173—and remand for further proceedings.

■■ The measure of proof is the difference between the percentage share that Zenith actually enjoyed during the damage period and the percentage it would have had as a free competitor. There was testimony for Zenith, relied on by the district court, that in the four year damage period, had Zenith been free from the unlawful activity of the Canadian pool which virtually excluded it from the Canadian market, it would have enjoyed the same proportion of that market as it did in the United States market. In Canada its principal competitors were counterparts of its principal competitors in the United States. Its promotion and advertising flowed back and forth between the two countries. Distributors in Canada were available, but were frightened off by the pool's activities and threats. It is our view that

---

3. Zenith argued in its original brief that the statute of limitations was tolled by reason of Sec. 5(b) of the Clayton Act during the pendency of United States v. General Electric, et al. in the Southern District of New York from November 28, 1958 to November 1, 1963. At the trial Zenith did not raise this point in a reply to HRI's affirmative defense, so that, strictly speaking, the point is not proper-

ly before us. However, in any event, the law of this circuit is that the tolling of the limitation protects a plaintiff in a private antitrust suit only with respect to a party defendant in the government suit. Sun Theatre Corp. v. RKO Radio Pictures, 213 F.2d 284, 292 (7th Cir. 1954). HRI was not a party defendant in that suit, although named as co-conspirator.

this was competent evidence, prima facie, upon which the amount of damage could be reasonably approximated, by virtue of the Supreme Court's decision in Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264–265, 66 S.Ct. 574, 90 L.Ed. 652 (1946).

■ The district court in permitting the filing of HRI's affirmative defenses of release and statute of limitations—as an amendment to HRI's defense to Zenith's counterclaim—made it plain in doing so that the court would make no change in its findings and conclusions with respect to damage in the Canadian market. However, we refer again to the statement of the Supreme Court that "[s]ome part of the damages awarded * * * necessarily resulted from pre-damage period conduct." 395 U.S. 100, 116–117, 89 S.Ct. 1562, 1573. The Court noted that although the damage award was confined to the damage period, the trial court apparently deemed it immaterial whether the "damage-causing" acts occurred before or after the start of the damage period.

Earlier in this opinion we held that the releases only barred Zenith's recovery of damages caused by injuries inflicted prior to the date of the releases; that the damage period commenced to run from the last overt act of the conspiracy; and that the statute of limitations did not bar recovery of damages caused by "damage-causing" acts within the period. Accordingly, we think that HRI should have —what it was not given at the trial—an opportunity to introduce testimony, in support of its defense of statute of limitations aimed at excluding from recovery damages flowing from pre-period "damage-causing" acts, as well as an opportunity to introduce evidence to show that Zenith's damage flowing from "damage-causing" acts within the period did not amount to $6,297,391.

The judgment for $6,297,391—before trebling—is vacated and the cause is remanded for further proceedings consistent with the views expressed in this opinion.