Ruth **TALIAFERRO** et al.

v.

**STATE COUNCIL OF HIGHER EDUCATION** et al.

**Civ. A. No. 73-584-R.**

United States District Court,
E. D. Virginia,
Richmond Division.

March 6, 1974.

Philip J. Hirschkop, John D. Grad, Alexandria, Va., for plaintiffs.

Patrick Lacy, Jr., Asst. Atty. Gen. of Va., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, females and former teachers at Virginia institutions of higher education, seek monetary and injunctive relief on behalf of themselves and others similarly situated from alleged deprivations of constitutional rights arising during the course of their employment by said institutions, including their dismissal. Jurisdiction is alleged pursuant to 42 U.S.C. §§ 1983 and 1985 and 28 U.S.C. §§ 1331, 1343 and 2201. The case is presently before the Court on plaintiff's motion for declaration of a tentative class and defendants' motion to dismiss on the grounds of lack of jurisdiction by reason of immunity and failure to state a claim upon which relief can be

granted.[1] Defendants have moved in the alternative that the class aspects of this suit be dismissed. Upon the material before it, the Court deems this matter ripe for disposition.

Plaintiffs allege discrimination on the basis of sex in the hiring, firing, promotion and administrative treatment of members of their class. Defendants initially argue that they are not "persons" within the meaning of 42 U.S.C. §§ 1983, 1985. For purposes of considering and ruling on the instant motion, the defendants will be divided into two classes: the State Council of Higher Education and the named defendants in their official capacities composing one class, and the individually designated defendants in their individual capacities composing the other.

■ The motion as addressed to the State Council of Higher Education is well taken. The State of Virginia is not a "person" under § 1983. Landman v. Royster, 354 F.Supp. 1302 (E.D.Va. 1973); Sires v. Cole, 320 F.2d 877 (9th Cir. 1963); Gainey v. Pitt County Superior Court, mem. decis. No. 13,263 (4th Cir. Feb. 24, 1969). See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961). Neither are its agencies or departments. Bennett v. California, 406 F.2d 36 (9th Cir. 1969); Holloway v. Virginia Dept. of Welfare and Institutions, C.A. 319–70–R (E.D.Va. June 24, 1970), aff'd. mem. decis. No. 14,899 (4th Cir. Oct. 14, 1970). Furthermore, political subdivisions of states are not "persons" under this section. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Moor v. County of Alameda, 411 U.S. 693, 93 S. Ct. 1785, 36 L.Ed.2d 596 (1973). As an agency of the state, the State Council of Higher Education is, therefore, not a "person" under § 1983.

While this Court and other courts, including the Fourth Circuit Court of Appeals, have in the past entertained actions for injunctive, as opposed to monetary relief, against the State Council and similar state agencies, see, e. g., Norris v. State Council of Higher Education, 327 F.Supp. 1368 (E.D.Va.1967), aff'd Bd. of Visitors v. Norris, 404 U.S. 907, 92 S.Ct. 227, 30 L.Ed.2d 180; Garren v. City of Winston-Salem, 439 F. 2d 140 (4th Cir. 1971); Harkless v. Sweeny Independent School District, 427 F.2d 319 (5th Cir. 1970), this dichotomy was specifically disapproved by the Supreme Court in City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L. Ed.2d 109 (1973). While Bruno dealt with municipalities, its holding is equally applicable to other entities which would not be considered "persons" for purposes of monetary liability. See Kirstein v. Rector & Visitors of University of Virginia, 309 F.Supp. 184 (E.D.Va. 1970). See, also, Westbrook v. Dinwiddie County School Board, C.A. 198–73–R (E.D.Va. Nov. 1, 1973).

■ The Supreme Court, however, has itself since Bruno, heard and decided on the merits § 1983 cases involving defendants who would appear beyond the reach of that section as this Court interprets Bruno's gloss. See, e. g., Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). Since similar relief would be available through suit of the individuals comprising the Boards or Agencies, the question may not have been raised below or presented to the Supreme Court. Cf. Harper v. Kloster, 486 F.2d 1134 (4th Cir. 1973). Thus the failure of the Supreme Court to extend and enforce the implications of Bruno is not necessarily inconsistent with this Court's opinion. This Court is duty bound to adhere to the dictates of the Supreme Court as communicated both through reason and example, and wherever possible the two must be viewed as consistent. The logic of Bruno seems inescapable; the absence of comment in LaFleur ambiguous. Since

---

1. In their original complaint, plaintiffs also alleged a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Defendants, in turn, addressed numerous motions to that claim. The Title VII claim, however, has been withdrawn, and it is unnecessary to reach those motions of defendants addressed to it.

this Court can perceive no distinction in principle between a state or county and the agencies or institutions into which it divides itself, or the agents in their official capacities through which it acts, the Court can reach no other conclusion than that the State Council of Higher Education, and the named defendants in their official capacities, are not "persons" for purposes of either monetary or injunctive relief under § 1983. The motion to dismiss the State Council and the named defendants in their official capacities as defendants in this action will be granted.

■ A different situation arises with regard to state officers, agents and representatives sued in their individual capacities on the basis of acts done in the course of their official functions.

Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

If the statute does not refer to state "officers, agents and representatives," it is difficult to conceive of what "person" Congress might have had in mind. In any event, the inclusion of state officers as "persons" under § 1983 was clearly approved in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) and, as far as this Court can discern, never judicially questioned. The motion to dismiss the individual defendants on the grounds that they are not "persons" under § 1983 will be denied.

■■ Defendants next contend that unconstitutional action taken by state officers is protected by the sovereign immunity of the state. It has been set-

tled law since Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that suits against state officials to enjoin their invasion of constitutional rights are not forbidden by the Eleventh Amendment or the common law doctrine of sovereign immunity. Georgia R. Co. v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952). Furthermore, § 1983 was intended to reach "those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." Monroe v. Pape, supra, 365 U.S. 167, 81 S.Ct. 473 (1961). It is no less clear that the Eleventh Amendment does not stand as a bar to § 1983 suits of such officials for damages. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Monroe v. Pape, supra. See Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L. Ed. 389 (1944).

■ Under the common law, however, there does exist a doctrine of immunity from damages[2] for state officials who having acted in an unconstitutional manner did so "in unquestioned good faith and in perfect accord with long standing legal principle." Kirstein v. Rector and Visitors of University of Virginia, 309 F.Supp. 184, 189 (E.D.Va. 1970). This immunity has been incorporated into § 1983 doctrine. Skinner v. Spellman, 480 F.2d 539 (4th Cir. 1973); Eslinger v. Thomas, 476 F.2d 225 (4th Cir. 1973); Kirstein, supra. See Pierson v. Ray, supra. As stated in Eslinger, supra, 476 F.2d at 229:

A federal cause of action based on sex-discrimination has no deep common-law roots; rather, it emerges from recent enlightened approaches to what constitutes equal protection of the laws under the fourteenth amendment. Consequently, there exists in this case no well-defined common-law defense of good faith to adopt as a de-

---

2. This doctrine does not extend to suits for injunctive relief. See Jacobsen v. Schaefer, 441 F.2d 127 (7th Cir. 1971); Kirstein, su-

pra; Eslinger v. Thomas, 476 F.2d 225 (4th Cir. 1973).

fense in the federal suit. Yet, as *Kirstein, supra,* points out, in the area of sex-discrimination, the inchoate state of legal guidelines suggest that good faith, coupled with reasonable grounds to believe one is acting within the law, should be sufficient to preclude liability for damages.

The questions raised in this defense are not answered by the record as it now stands. Granting plaintiffs the reasonable inferences from their pleaded facts, inferences to which they are entitled with the case in its present posture, the elements of the defense are lacking. While trial of the issue of good faith may indicate otherwise, good faith has not at this point been shown. For the reasons stated above, defendants' motion to dismiss on the grounds of common law and Eleventh Amendment immunity will be denied.

■ Defendants next move to dismiss the complaint as time barred by the statute of limitations. Suits brought in Virginia pursuant to 42 U.S.C. § 1983 are governed by a two year statute of limitations. Almond v. Kent, 459 F.2d 200 (4th Cir. 1972). The same time limitation applies for suits brought pursuant to other sections of the Civil Rights Act of 1871, including 42 U.S.C. § 1985. Landman v. Royster, 354 F. Supp. 1302 (E.D.Va.1973).

Plaintiff Taliaferro was allegedly forced into retirement by the discriminatory action of the defendants, effective September 1973, and henceforth she has been denied employment at Longwood College. Plaintiff Dyson was allegedly dismissed by the actions of the defendants, effective at the end of the 1972–73 academic year and henceforth she has been denied reinstatement at the Virginia Polytechnic Institute and State University. Plaintiffs' complaint was filed with this Court on November 20th, 1973.

■ The claims of plaintiffs Taliaferro and Dyson are therefore not time barred with respect to suit for damages for their allegedly unconstitutional dismissal. The discriminatory employment conditions which allegedly existed during the course of their employment presumably continued through the last days of their employment and are also properly the subject of action at this time. As stated in Baker v. F & F Investment, 420 F.2d 1191, 1200 (7th Cir. 1970):

> Plaintiffs have alleged wrongs committed by defendants which continue during the entire lives of the individual purchase contracts. They have alleged a conspiracy among defendants, the object of which was the establishment of a continuing relationship with individual plaintiffs. That relationship, by the same token, constituted a prolonged and continuing invasion of the rights of the purchasers. As in Hazeltine Research, Inc. v. Zenith Radio Corporation, 418 F.2d 21 (7th Cir. 1969), the limitations periods commence to run from the last overt act of the conspiracy, permitting plaintiffs to recover "for damages suffered within the damage period as a result of an overt act repetitious of the unlawful pre[limitation] period acts occurring in the damage period" (418 F.2d at p. 25).

Furthermore, the harm arising from discriminatory practices in the later stages of employment, representing a culmination of the frustration produced throughout plaintiffs' tenure, might be shown to be cumulative and indivisible warranting relief accordingly. See Landman v. Royster, 354 F.Supp. 1302, 1314–1315 (E.D.Va.1973). This point, however, awaits further development. Finally, any failure to rehire these plaintiffs subsequent to their dismissal which can be shown to have arisen from the same discriminatory attitude, would give rise to a cause of action for damages therefrom within the statute of limitations.

The circumstances surrounding plaintiff Schotta's participation in this action are somewhat different. Ms. Schotta commenced teaching at the Virginia Polytechnic Institute and State University in the fall of 1967. She is alleged to have been unconstitutionally discrimi-

nated against during her employment with regard to pay, promotion and working conditions. Her employment was terminated by letter of April 6, 1970, effective June 6, 1971. On May 20, 1971, Ms. Schotta filed a complaint alleging sexual discrimination with the Office of Civil Rights, Department of Health Education and Welfare (HEW).[3] Plaintiffs assert that, upon information and belief, HEW concluded that Ms. Schotta had been subjected to wilful sex discrimination.

The Court finds therefore that its conclusion concerning plaintiffs Taliaferro and Dyson is not applicable to plaintiff Schotta since her university employment was terminated more than two years prior to institution of this action. While the damages arising from the alleged discrimination in employment may have been cumulative up until termination, that event marked a culmination of those damages and a severance of the relationship in which they were produced. Even if the defendants' discriminatory attitude can be said to have continued unabated and occasioned subsequent refusals to rehire, the termination of plaintiff Schotta's employment marked the end of an isolable phase of the alleged discrimination against her and, as such, a legal watershed. A mature cause of action emerged at that point. Plaintiff seems to have sensed as much, having at this time filed her complaint with HEW.

Plaintiff asserts that the subsequent refusal of defendants as a class to rehire her constituted a continuation of a conspiracy to deprive her of her rights and that all acts within the course of the conspiracy should be timely if any act in perpetration is timely. Hazeltine Research v. Zenith Radio Corp., 418 F.2d 21 (7th Cir. 1969). *Hazeltine*, however, held only that an action for damages sustained within the limitations period as the result of an overt act within the

limitations period will not be barred simply because the act is "repetitious of the unlawful pre-period acts." See Hanover Shoe, Inc. v. United Shoe Machinery Corp., 377 F.2d 776 (3d Cir. 1967) (supplemental opinion at 793–795). This rule does not act to carry forward pre-period damages arising from pre-period acts. Plaintiff Schotta has, however, alleged a conspiracy to refuse to hire her, the overt acts of which and the damages for which occurred within the limitations period. For purposes of pursuing *this* claim, Ms. Schotta's presence in this action is not time-barred.

Plaintiff Schotta asserts that the statute of limitations should be tolled in her case during the pendency of her complaint to HEW. Although state law, which would not appear to call for tolling in this situation, ordinarily controls, pursuit of proper federal administrative remedies is to be encouraged, see McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); Parisi v. Davidson, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972), and a federal tolling exception might in proper circumstances be added to state doctrine in the interest of preserving the integrity of the Congressionally created process for federal claims resolution. See Atkins v. Schmutz Mfg. Co., 435 F.2d 527 (4th Cir. 1970). However, the Court is unable to discern from the pleadings as they now stand whether it is asserted that such a complaint as that filed by the plaintiff with HEW was Congressionally intended as an administrative remedy for the wrong plaintiff is alleged to have suffered, and in that regard, whether plaintiff contends that personal relief (as opposed to a cut-off of federal funds or other public vindication) was available through that channel. Therefore counsel will be given the opportunity to address these issues before final decision on plaintiff's tolling theory.[4]

---

3. The Court notes that states were not at that time included among "employers" to whom Title VII of the 1964 Civil Rights Act applied.

4. If the fact that the complaint was filed is relevant, then the obstruction of the administrative process which plaintiff alleges might then become relevant.

Defendants next assert that plaintiffs' claims are conclusory and without any factual basis alleged in the complaint. On the contrary, plaintiffs have alleged, inter alia, that they were not accorded equal consideration with regard to salaries, promotion, and working conditions vis a vis male educators at the institutions where they were employed. They further allege that their employment was terminated and their applications for reinstatement were denied on the basis of standards not applied to male colleagues, who were similarly situated. Plaintiffs allege that the unequal treatment aforementioned was the product of discrimination against them because of their sex. Such allegations clearly state a substantial claim under the Fourteenth Amendment. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). Cf. Westbrook v. Dinwiddie County School Bd., C.A. 198–73–R (E.D.Va. Nov. 1, 1973).

Defendants' final contention that the complaint fails to state a claim upon which relief can be granted is that the complaint fails to allege sufficient facts of personal involvement to justify recovery of monetary damages against the named defendants and that the complaint fails to allege sufficient facts for any relief, monetary or injunctive, against the Governor.

Reliance on the doctrine of respondeat superior would not be viable in this case.[5] Thus, to state a claim under § 1983, plaintiffs must allege either

actual personal misconduct by the presidents and administrators sued, or "actual knowledge of the challenged actions of [their] subordinates and [acquiescence] in them." Cook v. Cox, 357 F. Supp. 120, 126 (E.D.Va.1973). See also, Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), rev. on other grounds, District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) (failure to sufficiently train and supervise). In the absence of specific acts by persons in charge, proof of acquiescence can be advanced through a showing of "a pattern of close supervision by the defendants and that the acts themselves complained of were part of a consistent pattern of conduct of the subordinates." Cook, supra, 357 F.Supp. at 126.

In assessing the propriety of plaintiffs' claims for monetary damages, it must be borne in mind that at this stage all doubts must be resolved in favor of the plaintiffs.

A complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.* (emphasis in original). 2A Moore's Federal Practice, ¶ 1208, pp. 271–74.

Plaintiffs are entitled not only to the presumption of truth as to facts pleaded, but also to any favorable inferences arising therefrom.

Plaintiffs have alleged in their complaint certain specific acts emanating from the highest administrative lev-

5. The applicability of the doctrine of respondeat superior to § 1983 actions remains an open question. Compare Hesselgesser v. Reilly, 440 F.2d 901 (9th Cir. 1971); Hill v. Toll, 320 F.Supp. 185 (E.D.Pa.1970), with Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973); Salazar v. Dowd, 256 F.Supp. 220 (D.Colo., 1966). This Court, however, need not reach that issue.

The usual master-servant relationship does not exist between the president of a public college and the professors and instructors employed by that college. Both administrators and teachers are employees of the same

employer, the state which has established the institution. It is not, then, for the president's benefit, or that of any other administrators that the venture in which all are involved is going forward. They are therefore not proper persons on whom to place vicarious financial responsibility. See Robinson v. Slayton, 475 F.2d 1400 (4th Cir. 1973); Casstevens v. Harver, C.A. 73–397–R (Oct. 23, 1973). The proper "person," in terms of tort doctrine, would be the State of Virginia. However, as heretofore pointed out, the State of Virginia is not a "person" within the meaning of § 1983.

el. Plaintiff, Taliaferro, for example, is alleged to have had a conversation at the time of her hiring with the President of her university indicating his knowledge of and acquiescence in sexually discriminatory department attitudes and practices. (Comp. ¶ 14). She has further alleged a discriminatorily administered termination policy discretionary control of which resided explicitly in the President. (Com. ¶ 25). Furthermore, plaintiffs in general have alleged specific acts of discrimination concerning salary, promotion and assignment to college committees. They have alleged hiring and discharge practices which are not only sexually discriminatory but employed to inflict punishment for the exercise of First Amendment rights. (Comp. ¶ 39). The Court is unable to say at this point at what administrative level personal involvement in the making of such decisions ends. However, faculty employment practices, particularly hiring and discharge decisions but including aspects of salary, promotion, etc., are relatively significant elements in the course of university life and the pursuit of university purposes. It may be that personal involvement of high level administrators in the making of these decisions varies from institution to institution. Plaintiffs of course, up to this point, have had no opportunity to prove that any personal involvement at the presidential level has occurred. Yet, based on the pleadings before it, the Court concludes that facts have been alleged which warrant the taking of evidence on the issue of personal involvement regarding all but one of the named defendants.

■ The Court, however, finds no facts alleged which implicate either personally or in any other relevant manner the Governor of the State of Virginia in the sexually discriminatory practices allegedly carried out at the institutions in question. Thus, while the motion to dismiss the damage claims against the other named defendants will be denied, the motion to dismiss the Governor of the State of Virginia as a defendant in this action with regard to claims for both monetary and injunctive relief will be granted.

The remainder of defendants' motion addresses plaintiffs' motion for declaration of a tentative class action and argues on numerous grounds that the class aspects as to both the plaintiff and defendant classes be dismissed. The requirements of Rule 23 for the maintenance of a class action of this nature are as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

 ＊ ＊ ＊ ＊ ＊ ＊

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or un-

desirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Defendants do not appear to challenge the sufficiency of the complaint in meeting the numerosity requirement of 23(a)(1). They have, however, included in their extensive list of objections to a declaration of a class action the assertion that no common or typical questions of fact or law are here involved.

■■■■■ In providing for disposition in a single action of the legal claims of a multitude of litigants without the necessity of separate prosecutorial participation by each plaintiff or repetitive defenses of similar claims by defendants, use, in the proper circumstances, of the class action mechanism serves both Court economy and litigant convenience. In pursuing these complementary salutary effects, the drafters of Rule 23 incorporated class requirements providing dual protection of the Court and litigants from misuse and abuse of the class device. See Wright and Miller, Federal Practice and Procedure § 1754 (1972). The commonality requirement of 23(a)(2) requires that a question of law or fact be presented which is shared in the grievances of the prospective class as defined. The typicality requirement demands that the named plaintiffs be proper members of that class with the disputed issue occupying essentially the same degree of centrality to their claim as to that of other members of their purported class. Both requirements partake of the dual functions heretofore indicated. First, they are intended to afford protection to the members of the plaintiff and defendant classes by insuring them against the unwarranted and unnecessary involvement of each in the adjudication of legal rights and against representation in actions in which they do have a stake by representatives who do not or whose stake is dissimilar. Second, these requirements are intended to promote the judicial economy which lies at the heart of the class action concept. In exchange for the extra burdens of class adjudication imposed on the Court, the Court in dealing with the type of class provided by Rule 23(a)(2) and (3) achieves the benefits of determining in a single action numerous claims which can properly be resolved on the basis of similar or identical evidence or legal argument. Thus, subsections (a)(2) and (a)(3) of Rule 23, although differing in the specific aspects of representative adequacy upon which they focus, are both informed by the complimentary ultimate purposes of Rule 23 discussed above.

■■■■■ In one sense, the ultimate fact question with regard to all members of the prospective class is whether the alleged denials of employment or equal promotional consideration were based on sexual discrimination.[6] Such a question under proper circumstances would support the plaintiff class under 23(a)(2) and (a)(3). Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968). In a suit brought on behalf of a class composed of employees subject to the control of a single university administration, proof that unequal treatment of representative members of the class was based on sexual discrimination would raise an inference that similar objective or statistical inequality developing as a result of the policies of those employers was deliberate and similarly motivated. See Hall v. Werthan Bag Corp., 251 F.Supp. 184 (D.C.Tenn., 1966).

■■■■■ In the present case, however, the named plaintiffs seek to represent women at universities which, facially at least, appear to be operated and administered independently and by different persons than those at which and by

---

6. The central question of law is not at issue here since defendants appear to concede that if discrimination by sex is shown their conduct would be violative of the Fourteenth Amendment.

whom the representative plaintiffs allege they have suffered unconstitutional discrimination. Absent evidence of some connective link or mechanism of central policy determination,[7] neither of the policies of Rule 23(a)(2) and (a)(3) are served. Members of the defendant class who have had no contact with the named plaintiffs run the risk of having to submit to extensive discovery without any specific factual claim having been made against them, and members of the plaintiff class become involved in the necessarily antagonistic position of litigation with their employers against whom neither they nor their "representatives" have alleged specific improper conduct. Furthermore, the Court is asked to manage in a single action claims which may require discrete findings concerning the motivation of the administrators of more than a dozen colleges and universities without the benefit of any necessarily overlapping inferences. See La Mar v. H & B Novelty & Loan Co., 489 F.2d 461 (9th Cir., 1973). See also, 3 B Moore's Federal Practice, ¶ 23.06–1 (1973 supp.), p. 41.

These considerations would not apply, however, were plaintiffs' allegations of a conspiracy among the defendants named and whatever class they represent substantial. While plaintiffs have alleged factual consequences said to derive from a conspiracy, (see, e. g., ¶¶ 39, 58, and 59 of the complaint), they have not alleged facts which go to the existence of the conspiracy itself. Plaintiffs maintain that the proper procedure under these circumstances is for the Court to declare this a tentative class action for purposes of discovery thereby allowing them to gather evidence to bolster their claim of conspiracy. See Gilbert v. General Electric Co., C.A. 142–72–R (E.D.Va., Feb. 6, 1973); Branch v. Reynolds Metals Co., C.A. 170–72–R (E.D.Va., Dec. 13, 1972). This is precisely, however, the intrusion which defendants feel they have a right to avoid absent a more definite claim. Fortunately the interest of both sides can be protected and justice served by proceeding in the following manner. The Court will at this time limit the tentative class aspects of this complaint. See Wright and Miller, Federal Practice and Procedure, § 1760. The named plaintiffs will be allowed to pursue discovery relating to their claims against institutions with which they themselves have had direct dealings giving rise to allegations of sexual discrimination. They may further pursue discovery relating to the class of persons whom they allege were similarly discriminated against by those institutions. Such claims would include the claim of conspiracy. Indeed, if anyone has been harmed by the alleged conspiracy it would appear that these plaintiffs have. If in the course of that discovery, facts are uncovered which support the claim of a more extensive conspiracy, the Court may at that time, upon proper motion, consider a broadening of the plaintiff and defendant classes for purposes of discovery in accord therewith. With these limitations, the Court feels the class will also pass muster for tentative purposes under Rule 23(a)(4) and 23(b)(2) and (b)(3).

For the reasons stated above the State Council of Higher Education, all named defendants in their official capacities, and the Governor of Virginia will be dismissed as defendants in this action, the parties will be directed to file any memoranda deemed appropriate in response to the issues raised in the Court's discussion of plaintiff Schotta's theory of a tolling of the statute of limitations in her case, and a limited tentative class will be prepared. The motions by the defendants that this action be dismissed en toto will be denied.

An appropriate order shall issue.

---

7. Such a link might arise in plaintiffs' allegation of conspiracy described *infra.*