**BLACK BROTHERS COMBINED OF the
CITY OF RICHMOND, INC.**

v.

**The CITY OF RICHMOND et al.**

**Civ. A. No. 74–0327–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Oct. 18, 1974.

JeRoyd X. Greene, Richmond, Va., for plaintiff.

James R. Saul, Asst. City Atty., Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

This matter is before the Court on defendants' motion to dismiss the complaint on the grounds that, *inter alia*, this Court lacks jurisdiction over the subject matter of the claim, in that the City of Richmond and certain of its officers are not amenable to suit in actions such as the present, arising under the Civil Rights Act, namely 42 U.S.C. §§ 1981, 1983, 1985 and 1988. As the jurisdictional challenge questions the adjudicatory power of the Court to entertain this action, it must be ruled upon before reaching the merits of defendants' motion.

Plaintiff relies upon Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) for authority that although not a "person" within the contemplation of § 1983 for purposes of a suit for money damages, the City of Richmond, and therefore its officers, are proper defendants under the Act and corresponding jurisdictional statute, 28 U.S.C. § 1343 for purposes of injunctive and declaratory relief. Contrawise, defendants interpret *Monroe, supra,* in conjunction with City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), as indicating that municipalities enjoy complete immunity from all suits predicated upon § 1983, whether equitable or legal in nature. For the reasons set forth below, the Court agrees with defendants' interpretation of the cited cases, and grants defendants' motion to dismiss the complaint with respect to the City of Richmond.

In Monroe v. Pape, the Supreme Court ruled that because a municipal corporation was not a "person" within the purview of § 1983 it could not be sued for monetary damages. The decision generated considerable disagreement among lower federal courts as to whether local government entities might be sued under § 1983 for equitable relief. Garren v. City of Winston-Salem, 439 F.2d 140 (4th Cir. 1971), vacated, 405 U.S. 1052, 92 S.Ct. 1489, 31 L.Ed.2d 787 (1971); *contra,* Sires v. Cole, 320 F.2d 877 (9th Cir. 1963). However, the Court laid to rest any contrary inferences which had been drawn from *Monroe* by its opinion in City of Kenosha v. Bruno, *supra.* In *Kenosha* the Court stated:

> We find nothing . . . to suggest that the generic word "person" in § 1983 was intended to have a bifurcated application to municipal corporations depending on the nature of the relief sought against them. Since, as the Court held in *Monroe,* "Congress did not undertake to bring municipal corporations within the ambit of" § 1983, [*Monroe* at 187, 81 S.Ct. at 484], they are outside of its ambit for purposes of equitable relief as well as for damages. 412 U.S. at 513, 93 S. Ct. at 2226.

■ It is thus clear from a reading of *Monroe* and *City of Kenosha* that an action predicated upon 42 U.S.C. § 1983 cannot be maintained against the City of Richmond since the city is not a "person" within the meaning of § 1983. Likewise, 42 U.S.C. §§ 1981, 1985 and 1988 are similarly unavailable to plaintiff insofar as it seeks to sue the city. Arunga v. Weldon, 469 F.2d 675 (9th Cir. 1972); Taliaferro v. State Council of Higher Educ., 372 F.Supp. 1378 (E. D.Va.1974); Ries v. Lynskey, 452 F.2d 172 (7th Cir. 1971); 42 U.S.C. §§ 1981, 1985, 1988. To rule otherwise would in effect ignore the express limitation regarding municipal amenability to suit under the Civil Rights Act as set forth in *Kenosha.*

■ It would appear that any suit against city officials in their official capacities is essentially a suit against the city and therefore not maintainable under the cited sections. See Jones v. Dinwiddie County School Board, 373 F. Supp. 1105 (E.D.Va.1974); Taliaferro v. State Council of Higher Educ., *supra.*[1]

---

[1]. In Taliaferro v. State Council of Higher Education, 372 F.Supp. 1378 (E.D.Va.1974) the district court considered the implications of City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Cleveland Board of Education v. LaFleur, 414 U. S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), and Harper v. Kloster, 486 F.2d 1134 (4th

Nevertheless, the plain implication of Harper v. Kloster, 486 F.2d 1134 (4th Cir. 1973) is to the contrary. We are bound by that decision.

Since the City of Richmond is not a "person" under the Civil Rights Act, this Court is without jurisdiction to entertain an action wherein the city is a defendant. 28 U.S.C. § 1343. Therefore, the complaint must be dismissed with respect to the City of Richmond for lack of jurisdiction to grant the relief sought as against that defendant.

■ The remaining defendants interpose common law immunity as a bar to suit in the absence of allegations that these defendants acted in bad faith or outside the scope of their authority.

■■ In Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the Court reviewed the concept of "executive immunity" and concluded that its purpose was to allow officials to perform their official functions free from the threat of suits involving personal liability. However, suits for injunctive or declaratory relief against state officials impose no such inhibitory effect on their ability to perform their official functions. Since Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it has been consistently held that in appropriate cases, officials may be enjoined from performing future acts in violation of federal law. Therefore, the Court finds that the claim of official immunity is unavailable to the named defendants in this action.

The second ground in support of defendants' motion to dismiss raises the issue of plaintiff's right to prosecute this claim as a representative of the purported class in that the Black Brothers Combined of the City of Richmond, Inc. lacks standing to sue in its own right thus precluding it from being a representative party.

■■ It is well established that corporations as well as individuals may sue under the Civil Rights Act to vindicate the deprivation of those freedoms which the Act was designed to protect. Safeguard Mutual Insurance Co. v. Miller, 472 F.2d 732 (3rd Cir. 1973). Nevertheless, in order to have standing to litigate a constitutional question, one must be asserting the right in his own behalf. Tileston v. Ullman, 318 U.S. 44, 63 S. Ct. 493, 87 L.Ed. 603 (1943). Aguayo v. Richardson, 473 F.2d 1090, 1098–1101 (2d Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974).

Plaintiff relies on N. A. A. C. P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) as empowering organizational groups to act as parties in actions seeking to redress the rights of their members. However, the injury therein alleged by the N. A. A. C. P., a violation of Fourteenth Amendment rights, was suffered not only by the individual members of the organization, but by the organization itself. Thus, *Button* is distinguishable on its facts from the instant case. Here the complaint alleges direct injury to the individual members of the purported class as a result of discriminatory employment practices, but is void of any allegation that Black Brothers itself has suffered similar injury. Indeed, upon considering the nature of the complaint, the Court can perceive of no set facts under which Black Brothers could complain of deprivations which would correspond to those allegedly suffered by the individual members of the class.

However, on the basis of Smith v. Board of Education of Morrilton Sch. Dist. No. 32, 365 F.2d 770 (8th Cir. 1966) plaintiff nonetheless urges that where fundamental constitutional rights are at issue, strict rules of practice regarding standing should be liberalized. In affirming the right of a teacher's association to represent a group of black teachers who had been dismissed due to the closing of one of the district's high

Cir. 1973) and concluded that defendants in cases such as this may not be sued in their official capacities. We have considered these cases and must conclude that in Harper v. Kloster, *supra*, the Fourth Circuit held to the contrary.

schools, the court in *Smith* cited several factors which it deemed influential in dictating a liberal evaluation of standing requirements similar to those at issue here. Among the factors considered were (1) the deterrent effect of fear of reprisal when an individual makes his own assertion of constitutional rights, and (2) that the individual representative may lose interest in the litigation if and when he obtains other employment. However, this Court finds the above considerations inapposite when applied to the present controversy.

In *Smith* there were but seven individual plaintiffs who alleged constitutional deprivations as a result of their dismissal; in the instant case a minimum of eighty-one black employees are potential members of the purported class of plaintiffs. Therefore, the possibility of repercussions against so large a group of named plaintiffs, each of whom risks essentially the same danger of reprisal as a named representative, is necessarily greatly reduced. Secondly, the individual plaintiffs in *Smith* had been dismissed and were unemployed at the commencement of that action, thus creating a substantial likelihood that they might seek and obtain other employment during the course of the trial, with the effect of losing interest in the controversy. Whereas in the instant case, the vast majority of persons in the proposed class are presently employed by the Richmond Fire Bureau, thus ensuring a continuity of interest in the ongoing litigation. Furthermore, there has been a substantial change in attitude with respect to civil rights litigation since 1966,

placing these cases under close judicial and public scrutiny, with the effect of minimizing the threat of post-litigation reprisal or retaliation.

In Aguayo v. Richardson, 473 F.2d 1090 (2nd Cir. 1973), cert. denied, 410 U.S. 921, 93 S.Ct. 1350, 35 L.Ed.2d 583 (1973), the court dealt squarely with the question of organizational standing to assert the rights of its members. On issues similar to those presented here, Judge Friendly ruled that the Civil Rights Act, 42 U.S.C. § 1983 does not confer standing upon an organization to sue for violations of the constitutional rights of its members, absent a showing of injury to the organization itself.[2] Moreover, the *Aguayo* opinion interpreted *Button, supra,* as being limited to actions wherein the organization was alleging a deprivation of its own rights as an organization. *Aguayo* at 473 F.2d 1100.

■ For the reasons stated above, this Court is compelled to grant defendants' motion to dismiss the complaint on the ground that the Black Brotherhood Combined of the City of Richmond, Inc. lacks standing to assert the rights of the alleged class of plaintiffs which it purports to represent.

However, in conjunction with this dismissal, plaintiff will be granted leave to amend its complaint in order to substitute a party or parties who can allege injuries similar to those complained of by the group of potential plaintiffs seeking relief herein, and can otherwise satisfy the requirements of Rule 23, Fed. R.Civ.Proc.

An appropriate order shall enter.

---

2. This Court does not read Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) as affecting "standing to sue" under the Civil Rights Act. The Court in *Sierra* prefaced and framed its opinion with the words:

Where . . . Congress has authorized public officials to perform certain functions according to law, and has provided by statute for judicial review of those actions under certain circumstances, the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff. 405 U.S. at 732, 92 S.Ct. at 1365.

The actions or functions prohibited by the Civil Rights Act do not fit into the subjects of judicial review described in the quoted portion of the *Sierra* opinion. The actions and functions of officials of the City of Richmond, for instance, are not founded upon authorization by Congress but instead are an exercise of governmental power reserved to the states in the Constitution.