Arthur ADAMS, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant,

Willie MULLINS, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. A. Nos. 81–0190(B), 82–0001(A).

United States District Court, W.D. Virginia.

June 1, 1983.

See also, D.C., 566 F.Supp. 1052.

Joseph E. Wolfe, Norton, Va., for Adams.

Martin Wegbreit, Castlewood, Va., for Mullins.

E. Montgomery Tucker, Thomas J. Bondurant, Roanoke, Va., Gabriel Imperato, Baltimore, Md., for Heckler.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

By order entered January 25, 1982, these cases were consolidated so as to facilitate the consideration of their common questions of law and fact. Shortly thereafter, plaintiffs moved for certification of a class and remand of their individual claims. In this opinion, the court will undertake to consider the motion for class certification. Plaintiffs' individual claims will be considered in a separate memorandum opinion and order to be entered in conjunction with the instant opinion.

### I.

The underlying facts of this matter are essentially undisputed. Arthur Adams has filed a complaint in this court challenging the final decision of the Secretary of Health and Human Services denying Adams' claim for disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. § 423. Willie Mullins has filed a complaint challenging the Secretary's final decision denying Mullins' claim for supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. § 1381 *et seq.* At the outset, it is appropriate *to note* that both Adams and Mullins have satisfied the jurisdictional requirements of 42 U.S.C. § 405(g), in that they filed their civil actions within 60 days from the date upon which the Secretary rendered a final decision denying their claims.

The common element in these cases is that in denying both plaintiffs' claims, the Secretary relied on a medical report and evaluation by Dr. Larry E. Martin.[1] Dr. Martin was formerly a member of a medical group which provided volume medical examinations for use in the administrative adjudication of social security disability cases. This court has had the opportunity to review Dr. Martin's medical practices in a number of individual social security cases. In the course of one of those earlier cases, Dr. Martin's deposition was taken. This deposition has been included in the record of the instant proceedings.

In an unreported memorandum opinion entered October 1, 1981, and attached as an appendix hereto, the court summarized Dr. Martin's approach as a volume provider as follows:

> Testimony from Dr. Martin established that in general practice, he would examine a claimant for a few minutes and then dictate a few cursory notes. Another doctor in the medical group, who had never seen the claimant, would then review the notes and produce a written report and physical capacities evaluation. The second doctor would then sign Dr. Martin's name to the report.

The court went on to offer the following comments:

> Such practice is abominable. While the false signature is deceptive and fraudu-

---

1. Due to an inability to produce the transcript from the administrative hearing in the Adams case, the Secretary has not filed an administrative transcript in that proceeding. Instead, the Secretary has moved for remand of that case so that a new administrative hearing might be conducted. Nevertheless, it is undisputed that the Administrative Law Judge in the Adams case relied upon a report by Dr. Martin in reaching his ultimate disposition. Presumably, Dr. Martin's report would remain part of the administrative record upon reconsideration of the Adams claim, absent intervention by this court. Thus, the court considers it appropriate to consider Adams' allegations concerning Dr. Martin's input prior to ruling on the Secretary's motion for remand.

lent in itself, it is merely the tip of the iceberg. The physical capacities evaluation form requires very specific and detailed findings. A cursory physical examination is simply not adequate for proper completion of the form. It goes without saying that the completion of the form by a doctor who has not even seen the claimant, and based on nothing more than the cursory notes of another doctor, constitutes an affront to the government, to the court, certainly to the claimant, and to ethical principles in general. Such ridiculousness is compounded by the fact that the medical vocational guidelines, which now govern such disability evaluations, accord great emphasis to the findings contained in a physical capacities evaluation form.

Much additional information has now been developed relative to Dr. Martin's practices as well as those of the medical group which employed Dr. Martin.[2] However, in the court's opinion, no facts or circumstances have been identified which would indicate that Dr. Martin's approach in such cases is any less reprehensible than that previously stated by the court. Perhaps sharing the court's indignation, plaintiffs filed their motion for class certification in an apparent attempt to rectify such abuses.

## II.

In their Rule 23 Motion, plaintiffs proposed certification of the following class:

All past, present, or future applicants, wherever, situated, for Social Security disability benefits or Supplemental Security Income (SSI) disability benefits who have been examined by Dr. Larry E. Martin or any other physician employed by Dr. Steven Thurman, Dr. Grafton Thurman or Dr. Peter Thurman, a/k/a Thurman, a/k/a Thurman and Thurman, a/k/a Suburban Medical Group, a/k/a

Suburban Internal Medicine Group, a professional corporation incorporated in the State of Tennessee and doing business in the States of Alabama, Georgia, Tennessee, Kentucky, Virginia, Illinois and Indiana, as part of consultative examinations scheduled by the Secretary or his representative, the Disability Determination Service of any State of the United States, and have had a report by Dr. Martin or any other physician employed by Thurman and Thurman filed in conjunction with their claim for benefits, and have been denied benefits by a final decision of the Secretary or have been denied benefits by a not yet final decision of the Secretary.

Stated briefly, plaintiffs maintain that all the projected class members suffered a deprivation of their Fifth Amendment right to due process of law in that the denials of their disability claims were based at least in part on fraudulent medical reports in clear contravention of the statutory scheme for fundamentally fair and impartial adjudication. *Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Inasmuch as constitutional rights are implicated, plaintiffs further maintain that it is of no great importance that many of the potential class members are unable to satisfy the jurisdictional prerequisites of 42 U.S.C. § 405(g), *See Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977).

Several explanatory comments need be made concerning the proposed class. To the extent that plaintiffs' pleadings can be read to suggest that this court's earlier opinions have covered all doctors employed by the Suburban Internal Medicine Group, it should be observed that the court to this date has only found the reports of Dr. Larry E. Martin to be invalid for purposes of claims adjudication. While the complicity

---

**2.** In his deposition, Dr. Martin testified that he was employed one day a week by the Suburban Internal Medicine Group, a professional corporation incorporated in the State of Tennessee, which had been formerly known as Thurman and Thurman, Associates. It has been brought

to the court's attention that Dr. Martin is no longer associated with the medical group. However, Suburban Internal Medicine Group apparently continues to perform social security examinations on a volume basis.

of at least one other doctor is obvious,[3] the evidence developed up to this time indicates that only the reports attributed to Dr. Martin were completed by a physician who did not actually examine the claimant. In short, the court is concerned that the evidence does not support the broad sweep of plaintiffs' proposed class.

It should also be noted that in earlier cases involving Dr. Martin which have arisen in this court, the Secretary has not opposed orders of remand providing for new administrative hearings as well as deletion of Dr. Martin's report from the administrative record. Indeed, the Secretary has generally consented to such orders.[4] Consequently, all the claimants known to this court who have been prejudiced by a Dr. Martin medical report have had their cases reconsidered after such report was deleted from the record. Plaintiffs' proposed class includes claimants who have been denied at the administrative level and who (1) did not exhaust all their administrative remedies or (2) did not perfect an appeal under 42 U.S.C. § 405(g). Mullins and Adams fall into neither category inasmuch as their appeals were perfected under the provisions of 42 U.S.C. § 405(g).

### III.

The court must conclude that the motion for class certification is properly denied at this time. The court does not accept defendant's arguments that the proposed class is impermissibly vague or that the court is without authority to certify a class containing members who have not satisfied the jurisdictional requirements of 42 U.S.C. § 405(g). Given the court's *ultimate* disposition in this matter, the court finds it unnecessary to consider these arguments in detail, especially since it may prove necessary to reconsider the same arguments at a later time. At this point, it is sufficient to hold that the factual situations of Adams and Mullins do not permit a meaningful inquiry relative to the issues involved for most members of the projected class. The court finds that the claims of Adams and Mullins are not typical of the class they seek to represent in that the key legal issues present in their cases are markedly dissimilar to those of the vast majority of the projected class members. Accordingly, the court concludes that the prerequisites set forth under Rule 23(a)(2) and (3) are not satisfied.[5]

As both a practical matter and a matter of legal significance, it is obvious that the primary thrust of plaintiffs' certification motion is directed to those affected claims which, for whatever reason, cannot now find their way to federal court under 42 U.S.C. § 405(g). Presumably, final administrative decisions were rendered in many of these cases well before Dr. Martin's practices came under scrutiny.[6] Presumably, many of these claimants failed to avail themselves of full exhaustion of their administrative remedies without ever knowing that their denials were based at least in part on questionable medical findings. Since the deficiency may be remedied in

---

3. The court notes that generally, it would seem that Dr. Grafton Thurman signed Dr. Martin's name to the medical reports purportedly prepared under Dr. Martin's direction.

4. It is true that the Secretary initially opposed remand of the Mullins case, due to what was said to be a *post facto* approval of Dr. Martin's medical findings by another medical advisor. However, at the time of oral argument on the class certification motion, the Secretary's representative agreed that the Mullins case should be administratively reconsidered without reference to the Martin report.

5. Rule 23(a) of the Federal Rules of Civil Procedure states as follows:

*Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

6. In his deposition, Dr. Martin testified that he had been performing consultative examinations for the same medical group since July of 1979.

cases still pending, plaintiffs urge that the closed cases are of greatest concern.

■ Adjudication of the rights of these claimants in closed cases simply cannot be undertaken through reference to the factual situations of Adams and Mullins. The court recognizes that Rule 23(a)(2) does not require that the questions of law and fact be identical for all class members. *Taliaferro v. State Council of Higher Education,* 372 F.Supp. 1378 (E.D.Va.1974). However, the mere fact that all potential class members may have suffered a deprivation of due process does not overcome the great factual and legal diversity existing between cases proceeding under 42 U.S.C. § 405(g) and those which may be entertained by this court only if and to the extent that a constitutional deprivation has occurred. The effect of the alleged deprivation is different.

While not controlling for jurisdictional purposes, the absence of a final administrative decision for the vast majority of the proposed class members entails a different legal analysis than is necessary for the claims of Adams and Mullins. Under 42 U.S.C. § 405(g), the court is charged only to determine whether the Secretary's denial of benefits is supported by "substantial evidence." *See Laws v. Celebrezze,* 368 F.2d 640 (4th Cir.1966). In all the Dr. Martin cases previously considered by the court, the court merely found that to the extent that the Secretary relied upon bogus medical reports in denying claims, the Secretary's final decisions were not supported by "substantial evidence." The identical finding is sufficient for disposition in Adams and Mullins. The facts of those latter cases do not necessitate a due process analysis nor do those facts evince the due process considerations of which the majority if not all of

the remaining class members must necessarily complain.

This consideration is most significant. Under plaintiffs' scenario, an appreciable number of claimants have received final administrative denials based on Dr. Martin reports and are now precluded from judicial review due to time considerations. Yet, it is premature to argue that these denials contravene due process guarantees until it can be demonstrated that the administrative process for correction of errors has been unsuccessfully tested.[7] There has been no suggestion that any of these affected claimants have sought or been denied a reopening of their claim under 20 C.F.R. §§ 404.987–88.[8] More importantly for the present inquiry, such a question is totally irrelevant to the cases of the proposed class representatives since their access to due process is ultimately assured by application of 42 U.S.C. § 405(g). Stated somewhat differently, the facts of the representative cases do not conclusively establish the need for certification. It is not sufficient for plaintiffs to expect the court to find such a need based on speculation as to what might be happening at the administrative level and based on facts not presented by their representative cases.

■ The claims of Adams and Mullins are not typical if they require substantially less proof than is required of other members of the class. *See Amswiss Intern. Corp. v. Heublein, Inc.,* 69 F.R.D. 663 (N.D. Ga., 1975). The proposed representatives need only show that their denials are not supported by "substantial evidence" due to reliance on suspect medical findings. Those class members not qualifying under 42 U.S.C. § 405(g) must ultimately show that

---

**7.** Again, the court does not consider lack of complete exhaustion leading to a final administrative decision and a § 405(g) appeal to be controlling for jurisdictional purposes in a case such as this involving colorable constitutional claims. *Califano v. Sanders, supra.* Instead, the court suggests that a due process challenge would seem to require some factual assertion that the administrative mechanism is incapable of addressing such alleged abuses.

**8.** In a reply memorandum in support of class certification, plaintiffs have appended a multitude of affidavits from claimants who were examined by doctors of the medical group. Most of these statements deal with the particulars of the examinations. There is no indication that any of these affiants sought reconsideration of their denials based on after-discovered discrepancies in reports of Dr. Martin. Indeed, several of the affiants were ultimately successful in their claims.

they were prejudiced by improper reliance on Dr. Martin's reports *and* that the Secretary has refused to address the error. Such a variance in the substance of the respective grievances weighs heavily against a finding of "typicality." *See Wright v. Stone Container Corp.,* 524 F.2d 1058 (8th Cir.1975).

## IV.

In concluding, the court must note its regret that the instant motion and underlying cases have languished on the docket for many months. It should be observed that much of this time was devoted to an unsuccessful attempt by the parties to reach an accommodation. It was also the court's understanding that plaintiffs contemplated the intervention of a party plaintiff whose claim had not proceeded beyond the administrative level. Except to the extent of its earlier comments, the court expresses no opinion as to what result would have been reached had such a new plaintiff sought to represent the proposed class.

As it is, the court is constrained to conclude that the named plaintiffs are not appropriate representatives of the proposed class. More generally, the court concludes that given the present record, the need and sweep of the proposed class can be demonstrated through nothing more concrete than educated speculation. Accordingly, the court concludes that the facts, circumstances, and legal posture of these proceedings do not justify class certification at this time. An appropriate order will be entered this day. Plaintiffs' individual cases will be considered in separate opinions and orders.

The clerk is directed to send certified copies of this opinion to all counsel of record.